**[J-67A-2014, J-67B-2014 and J-67C-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 47 EAP 2013 |
| | : |
| Appellant | : Appeal from the judgment of the Superior |
| | : Court entered on 05/15/2012 at No. 1268 |
| | : EDA 2011, reargument denied 07/18/2012, |
| v. | : vacating and remanding the judgment of |
| | : sentence entered on 05/06/2011, in the |
| | : Philadelphia Municipal Court, Criminal |
| KATRINA MOODY, | : Division at No. MC-51-MD-0000083-2011. |
| | : |
| Appellee | : ARGUED:   September 9, 2014 |
| | : |


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 48 EAP 2013 |
| | : |
| Appellant | : Appeal from the judgment of the Superior |
| | : Court entered on 05/15/2012 at No. 1310 |
| | : EDA 2011, reargument denied 07/18/2012, |
| v. | : vacating and remanding the judgment of |
| | : sentence entered on 05/06/2011, in the |
| | : Philadelphia Municipal Court, Criminal |
| BARBARA IVERY, | : Division at No. MC-51-MD-0000085-2011. |
| | : |
| Appellee | : ARGUED:   September 9, 2014 |
| | : |


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 49 EAP 2013 |
| | : |
| Appellant | : Appeal from the judgment of the Superior |
| | : Court entered on 05/15/2012 at No. 1316 |
| | : EDA 2011, reargument denied 07/18/2012, |
| v. | : vacating and remanding the judgment of |
| | : sentence entered on 05/06/2011, in the |
| | : Philadelphia Municipal Court, Criminal |
| BERNADETTE ARCHIE, | : Division at No. MC-51-MD-0000084-2011. |
| | : |
| Appellee | : ARGUED:   September 9, 2014 |

## OPINION

**MR. JUSTICE EAKIN**                    **DECIDED:    October 27, 2015**

This Court granted review to consider whether the Superior Court erred in vacating appellees' direct criminal contempt convictions.   We conclude the trial judge acted appropriately and violated no due process rights; thus, we reverse the order of the Superior Court and remand for reinstatement of the sentences.

On April 6, 2011, Shaun Warrick appeared in the Philadelphia Municipal Court for his preliminary hearing on two homicide charges.   Appellees are relatives of the victims, and were seated in the courtroom gallery.   Before testimony began, Warrick advised the court his mother had retained private counsel for him and requested a continuance.   At the court's request, his mother, escorted by court officer Richard Brandt, came forward to testify.   Appellees thereupon verbally and physically assailed Ms. Warrick, and a general melee erupted in the courtroom.   Warrick tried to defend his mother, which led to an expanded struggle that required deputy sheriffs and police reinforcements from outside the courtroom to restore order.   The courtroom was locked down for three hours.

When court reconvened, the trial court held a summary hearing for direct criminal contempt.   The court noted contempt involves conduct in the presence of the court that delays proceedings and determined the conduct here was "about as direct of a contempt as you can ever get."   N.T. Contempt Hearing, 4/6/11, at 5.   The court "put on the record what happened that [it] observed[,]" as:

> [W]e tried to bring [Warrick]'s mother in as a witness to testify as to whether or not she hired an attorney for [him].   That's all.
>
> When the court officer went out to get the mother, a fight broke out in the gallery involving numerous people in which the court officer got stuck in the middle and his arm was hit during the proceeding.   He can tell us more about what happened.
>
> Because of that, we had to shut down the court, call the sheriff.   Almost every free sheriff in the building came running in here.   We locked down

the courtroom. [Warrick] went nuts and started banging on the wall because he saw his mother being assaulted. The door got locked. And the sheriff had to wrestle with [Warrick] while all this happened, all because of what happened in the gallery of the courtroom.

Id., at 6-7.

The court officer then testified and confirmed the identity of appellees as the individuals who caused the disturbance. Appellees were not represented by counsel at that time and did not question the court officer. The court asked, "Do any of you ladies have something to say?" Id., at 12. Appellee Archie spoke up and was sworn in, but before she made a statement on the record, the court opted to delay proceedings for the appointment of counsel, given the likelihood of criminal charges and appellees' rights against self-incrimination with respect to those charges. Thus, proceedings ended for the day without testimony from appellees or any other witnesses. The court did make an "initial finding" of direct criminal contempt but deferred "final determination as to what the sentence should be" until appellees could meet with counsel. Id., at 15.

One week later, appellees Moody and Ivery were present with counsel.[1] Moody and Ivery submitted a joint continuance request, seeking to locate and interview witnesses to the altercation, arguing summary contempt defendants have a right to present their own witnesses and cross-examine other witnesses. The court denied the request, finding they were not entitled to call and cross-examine witnesses, "especially in extreme instances of contempt that take place in the presence of the [c]ourt." N.T. Sentencing, 4/13/11, at 8. In the court's view, the only process due was appointment of counsel for purposes of allocution before sentencing and to present circumstances that might "mitigate the events[.]" Id., at 9. Regarding appellees' claim of entitlement to cross-examine the court officer, the court stated it could disregard everything the court

_____

[1] Archie's counsel was unavailable, so the court rescheduled her sentencing hearing; ultimately Archie presented no evidence and apologized for her misconduct.

officer said because the court itself observed the contemptuous conduct. Id., at 10. It explained the court officer was called only to articulate details "for purposes of illustration" on the record, and his testimony was "not necessary as a basis for making [its] finding of contempt because [it] observed [the contemptuous conduct] with [its] own eyes[.]" Id., at 10-11. The court ultimately sentenced each appellee to five to ten days imprisonment.

Appellees appealed, and the three cases were consolidated. In its Pa.R.A.P. 1925(a) opinion, the court reiterated its view that, where the judge witnesses the offending behavior, neither appointment of counsel nor further development of evidence is required for a contempt finding; the court declared, "No amount of witnesses or cross examination of the judge or the court officer would convince this [c]ourt, the fact finder, that it does not know what it saw." Trial Court Opinion, 6/24/11, at 16-17. The court also addressed affidavits from witnesses to the brawl, concluding the affidavits conflicted with the events it had witnessed, which illustrated why it is "unnecessary and wasteful" to entertain such evidence in a case where the court itself observed the contemptuous behavior. Id., at 17 n.8. The court explained, "This is exactly why there was no need for this [c]ourt to hear witnesses to dispute the [c]ourt's version of events prior to making a finding of contempt." Id.

On appeal, appellees claimed: (1) the evidence was insufficient; (2) they were denied their rights to counsel, to cross-examine witnesses, to present evidence, and to testify; and (3) the sentences were an abuse of discretion.[2] In a published opinion, the Superior Court viewed the second issue as implicating due process, deemed it meritorious, and vacated and remanded for a new contempt proceeding.

---

[2] Appellees raised the same three issues; the cases were consolidated for argument, and a single opinion resolved the appeals. Appellees file a single joint brief in this appeal.

Commonwealth v. Moody, 46 A.3d 765, 771, 776 (Pa. Super. 2012).[3]  The court noted appellate review of direct-criminal-contempt matters is "'confined to an examination of the record to determine if the facts support the trial court's decision.'"  Id., at 771 (quoting Commonwealth v. Jackson, 532 A.2d 28, 32 (Pa. Super. 1987)).  It added that the statute governing summary punishment for contempt requires that the misconduct occur in the court's presence.  Id., at 772 (citation omitted); see also 42 Pa.C.S. § 4132(3).[4]

The court held the record did not support the trial court's position that it had witnessed the contemptuous conduct; rather, it had substantially relied upon the court officer's testimony to determine appellees' identities and the essential elements of contempt.  Moody, at 774.  The court viewed the record observations of the trial court describing appellees' conduct to be "general and vague[.]"  Id., at 775 (quoting N.T. Contempt Hearing, 4/6/11, at 6 ("[A] fight broke out in the gallery involving numerous people in which the court officer got stuck in the middle and his arm was hit during the proceeding.  He can tell us more about what happened.")).  Because the record did not demonstrate the trial court "personally observed" appellees' actions, the Superior Court held the conduct did not occur "in the presence of the court," as required under § 4132(3).  Id.  Given its position that review was confined to the record supporting the contempt finding, the court did not discuss the sentencing proceedings or the trial court's opinion in which it described its personal observations.

---

[3] President Judge Gantman concurred in the result without opinion.

[4] The power of the courts "to impose summary punishments for contempts of court shall be restricted to … cases … [where t]he misbehavior of any person in the presence of the court … obstruct[s] the administration of justice."  Id.  "To sustain a conviction for direct criminal contempt under this provision[,] there must be proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice."  Williams v. Williams, 721 A.2d 1072, 1073 (Pa. 1998) (citation omitted).

The Superior Court further reasoned the trial court's reliance on a witness meant the proceeding was not summary but was an evidentiary hearing where appellees "should have been permitted to cross-examine the court crier, and to present their own witnesses[.]" Id. (citation omitted). Because it found the trial court abused its discretion in holding a contempt hearing that violated appellees' due process rights, the court vacated the judgments and remanded for a new contempt hearing.[5]

We granted allowance of appeal to determine:

(1) Did the Superior Court err in ruling that [appellees'] violent in-court conduct was not summary direct criminal contempt because the trial court supposedly did not observe the conduct?

(2) In cases of summary direct criminal contempt, is a defendant entitled to counsel and to call witnesses?

Commonwealth v. Moody, 79 A.3d 1093, 1094 (Pa. 2013) (per curiam).

Both issues present questions of law subject to a de novo standard of review and a plenary scope of review. See Commonwealth v. Pasture, 107 A.3d 21, 27 (Pa. 2014) (citation omitted). However, as to the first issue, the parties are not in accord regarding what may be considered in determining contemptuous behavior, a dispute that implicates the scope of review.

The Commonwealth contends the Superior Court's conclusion the trial court failed to personally observe the contemptuous conduct was erroneous because appellees waived the issue. It asserts appellees did not raise that argument below; instead, appellees claimed the right to counsel and to call and cross-examine witnesses applies in all contempt proceedings, including summary proceedings. Accordingly, the Commonwealth submits the court improperly addressed the issue sua sponte.

---

[5] The court briefly reviewed and rejected the sufficiency claim but did not address the sentencing claim, given its decision to remand. Id., at 775-76.

On the merits, the Commonwealth contends the Superior Court misapprehended the relevant record. We agree. The Commonwealth stresses the conduct occurred in the courtroom gallery during the course of judicial proceedings, and the nature of the conduct — one appellee standing and holding a sign while screaming obscenities, then the two other appellees assaulting Ms. Warrick — was such that the trial court necessarily would have observed it. In addition to its inferential argument, the Commonwealth cites the trial court's repeated notations that it saw appellees engage in the contemptuous behavior. For instance, when court reconvened after the brawl, the court began by stating, "Contempt of court is something that happens in the presence of the [j]udge and delays proceedings. That's what happened. … [L]et me just put on the record what happened that I observed." N.T. Contempt Hearing, 4/6/11, at 5-6. The Commonwealth continues that the court then stated a fight broke out in the gallery as Ms. Warrick was being brought in to testify, and the melee required closing the courtroom.

The Commonwealth also cites the court's comments at the first sentencing hearing, where it explained the court officer had been called only "'for purposes of illustration'" and "'[i]t was enough what [the court] observed'" to support the contempt finding; the court added it had "'observed with [its] own eyes what these two ladies did[,]'" referring to appellees. Commonwealth's Brief, at 20-21 (quoting N.T. Sentencing, 4/13/11, at 10-11). The Commonwealth argues the Superior Court erred in dismissing these statements as if they were not part of the relevant record. Finally, the Commonwealth avers the court incorrectly deemed the trial court's observation of the misconduct to be an element of contempt that the court was obligated to prove. It cites Commonwealth v. Falana, 696 A.2d 126 (Pa. 1997), insisting this Court expressly held the in-the-presence-of-the-court requirement is satisfied where misconduct occurs in or near the courtroom, regardless of whether the trial court personally views it.

As to the second issue, the Commonwealth argues a direct-criminal-contempt defendant is not entitled to counsel and to call witnesses during summary proceedings. In support, the Commonwealth contends Commonwealth v. Crawford, 352 A.2d 52 (Pa. 1976), was wrongly decided. See id., at 54 ("[T]he summary conviction for contempt of court of a witness who was not represented by counsel cannot stand[.]"). The Commonwealth asks this Court to "reconsider, and overrule, its prior decision in Crawford." Commonwealth's Brief, at 35.

Appellees dispute the Commonwealth's waiver argument, noting they challenged the sufficiency of the evidence, a claim necessarily implicating whether the trial court actually observed the contemptuous conduct. Appellees cite their post-sentence motions, which did not directly assert the trial court failed to observe their conduct, but maintained the "evidence introduced" was insufficient because it did not demonstrate appellees committed any acts, much less acts constituting contempt. Appellees contend they reiterated this argument in their Pa.R.A.P. 1925(b) statements and Superior Court briefs, and the Superior Court agreed the record did not establish a requisite "element of summary direct criminal contempt[,]" i.e., the trial court's actual observation of the contemptuous conduct. Appellees' Brief, at 21. The fact the court awarded a lesser form of relief than sufficiency relief, appellees submit, does not mean its discussion and holding did not derive from the sufficiency argument.

On the merits, appellees aver summary proceedings for direct criminal contempt are permitted "only when the actions occurred within the full view of the judge and the judge does not need any witnesses to explain what occurred." Id., at 15. Appellees stress that, although the trial court stated at the summary hearing that it would put on the record what it observed, its ensuing description did not identify any of the three appellees or describe their actions; instead, the court merely noted a fight erupted in the courtroom,

causing Warrick to act out. Appellees posit the court may have been distracted at the time and did not actually see what caused the altercation. In appellees' view, the record demonstrates three facts in support of their position: (1) the court never put anything on the record concerning appellees and never identified what they did; (2) the court called a witness to testify as to what happened; and (3) the court asked numerous questions to elicit the facts.

Appellees recognize the court at sentencing stated that the court officer's testimony had only been introduced for illustrative purposes and it did not require the court officer's testimony to substantiate the contempt because it saw the contemptuous conduct with its own eyes. Appellees argue, however, the court's statements at sentencing were "materially inconsistent" with its statements and actions at the summary hearing. Id., at 17. Appellees posit the Superior Court was correct in concluding that employing summary contempt in these circumstances was improper. Appellees do not respond to the Commonwealth's argument that, under Falana, proof of judicial observation is not required for summary direct criminal contempt.

As to the second issue, appellees contend even if summary contempt was permissible under these circumstances, the trial court violated due process by conducting the summary hearing and finding them in contempt when they were neither represented by counsel nor afforded an opportunity to present or cross-examine witnesses.

Initially, we decline a finding of waiver vis-à-vis the question of whether the trial court actually observed appellees' conduct. This Court has held courts are generally prohibited from raising claims sua sponte that the parties did not raise below or in appellate pleadings. See Commonwealth v. Colavita, 993 A.2d 874, 891 (Pa. 2010) ("Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue sua sponte.") (internal quotation marks omitted); Pa.R.A.P. 302(a)

(issues not raised below are not reviewable on appeal). However, putting aside the question of whether the Superior Court rightly comprehended the trial court's findings, the Superior Court's focus on the trial court's observations arguably may be said to arise from its consideration of appellees' sufficiency claim.[6] On such a record, we are not prepared to upset the determination below on waiver grounds and thus proceed to the substantive issues.

The United States Supreme Court has long recognized the inherent power of a court to impose summary punishment for misconduct that occurs in its presence:

> To preserve order in the courtroom for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court, when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law.

Cooke v. United States, 267 U.S. 517, 534 (1925).

In Pennsylvania, "[t]his Court has long upheld a court's power to maintain courtroom authority" by the imposition of summary punishment for contempt in appropriate cases. Behr v. Behr, 695 A.2d 776, 778 (Pa. 1997). "[A] summary proceeding to protect the orderly administration of justice is perfectly proper[.] … The court must be able to control those appearing before it, and must be able to use its power summarily to avoid interference with the principal matter before the court." Commonwealth v. Africa, 353 A.2d 855, 865 (Pa. 1976) (plurality). "Summary proceedings for contempt of court are those in which the adjudication omits the usual

---

[6] Appellees argue the failure to observe was "necessarily" implicit in a sufficiency claim, but this is not precisely so. Failure to observe may affect what evidence there was, but it does not affect the weighing of that evidence. Simply saying the evidence was insufficient does not alert a reviewing court to the actual issue; nevertheless, we decline a finding of waiver in this case.

steps of 'the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial.'" Commonwealth v. Stevenson, 393 A.2d 386, 392 (Pa. 1978) (quoting Sacher v. United States, 343 U.S. 1, 9 (1952)). Thus, "the summary contempt power has been upheld against due process attacks[.]" Id. (citations omitted). Respecting due process, this Court has candidly acknowledged summary punishment for criminal contempt is a "drastic departure from our traditional view of due process[.]" Commonwealth v. Marcone, 410 A.2d 759, 763 (Pa. 1980). However, Marcone highlighted the justification for that departure, which was well articulated by Chief Justice Taft in Cooke:

> We think the distinction [between contempt merely "in the presence of the court" and that which takes place "in open court" or "in the face of the court," thereby justifying the departure from the traditional view of due process requirements,] finds its reason not any more in the ability of the judge to see and hear what happens in the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the very hallowed place of justice … is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment constituting due process that the assumption that the court saw everything that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it.

Id. (quoting Cooke, at 536) (internal quotation marks omitted).

This Court has noted the inherent authority of courts to impose summary punishment for contempt is a power incidental to the grant of judicial power under Article V of the Pennsylvania Constitution. See id. (citations omitted); see also Commonwealth v. McMullen, 961 A.2d 842, 849 (Pa. 2008) (citation omitted). Additionally, the General Assembly has addressed the power in enacting the Judicial Code. See, e.g., 42 Pa.C.S. § 4132(3) ("The power of the several courts of this Commonwealth …to impose summary

punishments for contempts of court shall be restricted to … cases … [where, inter alia, t]he misbehavior of any person in the presence of the court … obstruct[s] the administration of justice."). The Judicial Code provides the summary punishment of commitment for such contempt is only available where the misbehavior takes place "in open court." Id., § 4133.[7]

Further, the power to impose summary punishment for direct criminal contempt is not applicable to minor misconduct, even in open court, but instead is available only for "'such conduct as created an open threat to the orderly procedure of the court and such flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed and punished, demoralization of the court's authority will follow.'" Commonwealth v. Garrison, 386 A.2d 971, 976 (Pa. 1978) (plurality) (quoting Jessup v. Clark, 490 F.2d 1068, 1071 (3d Cir. 1973)). "Only in such circumstances may a court subject a contemn[o]r to punishment without the procedural protections otherwise accorded [to] the criminally accused." Id. In sum, courts have inherent power and statutory authority to impose summary punishment for direct criminal contempt for willful misconduct that occurs in the presence of the court and obstructs its fair and orderly process. See id., at 975 (citations omitted); accord In re Martorano, 346 A.2d 22, 27 (Pa. 1975) (citations omitted).

With these principles in mind, we turn to the specific issues presented. As previously discussed, the inherent power of a court to impose summary punishment for contemptuous misbehavior in its presence has long been recognized in both statute and

---

[7] Contempt can be committed directly or indirectly, and may be deemed civil or criminal depending on the court's purpose for imposing punishment. See Crozer-Chester Medical Center v. Moran, 560 A.2d 133, 136-37 (Pa. 1989). Classification determines a contemnor's procedural rights and a court's sentencing options.

case law, and does not offend our notions of due process.  Notably, as stated by the United States Supreme Court:

> [I]t is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that, for direct contempt[] committed in the face of the court, … the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions.  Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them.

In re Terry, 128 U.S. 289, 313 (1888).  In In re Terry, the Supreme Court was presented with facts similar to the present matter — acts of violence in open court resulting in injury to a court officer.  The contemnor, an attorney, physically engaged the court officer, "beating [him], and … assaulting him with a deadly weapon, with intent to obst[ruct] the administration of justice[.]"  Id., at 305-06.  On appeal, the contemnor disputed the trial court's version of events and complained he was not given an opportunity to be heard.  Acknowledging the traditional notions of due process, the Supreme Court explained:

> [T]here is another rule of almost immemorial antiquity, and universally acknowledged, which is equally vital to personal liberty, and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals.  It has relation to the class of contempts which, being committed in the fac[e] of a court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law.  … If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination.

Id., at 307 (emphasis added) (internal quotation marks omitted); see also Pounders v. Watson, 521 U.S. 982, 987 (1997) (per curiam) ("'There is no need of evidence or

assistance of counsel before punishment, because the court has seen the offense.'") (quoting Cooke, at 534); Ex parte Savin, 131 U.S. 267, 277 (1889) ("Where the contempt is committed directly under the eye or within the view of the court, it may proceed 'upon its own knowledge of the facts, and punish the offender, without further proof and without issue or trial in any form[.]'") (quoting In re Terry, at 309).

In Falana, this Court held when an individual makes a remark in court while the trial court is physically present, that person cannot avoid a contempt finding simply by alleging the court did not hear the comment. Falana, at 129. There, the contemnor's statement to the victim, i.e., "I'll be out one day[,]" was made in open court while the judge was on the bench. Id., at 128. In upholding the contempt conviction, we did not require proof the court actually heard the contemnor speak the words; we found it sufficient that the comment was made in the court's presence, in open court, even though the court did not hear it. Id., at 129.

In sum, precedent demonstrates this Court and the United States Supreme Court, with full regard to due process, have consistently held summary contempt is warranted when the contemptuous conduct takes place in the presence of the court. Thus, the court so violated is under no obligation to prove it actually witnessed the disturbance. See, e.g., In re Terry, at 308.

In contrast, the Superior Court here declared, "Our Courts have long required that the contemptuous conduct actually be observed by the [c]ourt[.]" Moody, at 773 (citation omitted). The court's conclusion with respect to a trial court's actual observation derives from In re Oliver, 333 U.S. 257 (1948). There, the United States Supreme Court determined misconduct that took place during secret grand-jury proceedings did not occur "in open court" or fall within "the narrow category of cases that can be punished as contempt without notice, hearing and counsel[,]" since the proceedings, which were held

in secret, carried "no possibility of a demoralization of the court's authority before the public." Id., at 275-76. Concluding punishment for the contemptuous conduct did not qualify for the exception to due process requirements, the Court noted, "The narrow exception … includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, [and] are <u>actually observed by the court</u>[.]" Id., at 275 (emphasis added).

The actually-observed-by-the-court statement was emphasized by the Superior Court in concluding the requirements of 42 Pa.C.S. § 4132(3) were not established. See Moody, at 773, 775. Still, the Superior Court acknowledged that "Pennsylvania courts have departed from the 'observed by' or 'in front of' requirement for summary hearings of direct contempt." Id., at 773. The court went on to say "there is no indication that the trial judge personally observed [appellees]' specific actions." Id., at 774. This is based on "the record" being confined to the testimony of the court official. However, it is uncontradicted that court was open and in session, and that the judge was on the bench; the judge in every courtroom in the country will be facing into that courtroom, not away. Thus, the judge was facing into the gallery where the fight erupted, facing appellee Archie, who was holding a sign while screaming in obscene language, and facing toward Moody, who was running up to assault the witness, with Ivery joining the fight. It is hardly unreasonable to find this from the factual record — we credit the judge's statements of personal observation.

Indeed, the factual recitation by the Superior Court in its opinion cites the record for all of the above and more, except the direction the judge faced; we shall infer the judge faced into the courtroom. Not only did the judge necessarily see the fracas, he repeatedly stated he saw the contumacious conduct himself. He "observed … with [his]

own eyes" what happened. N.T. Sentencing, 4/13/11, at 11. This is sufficient support for a finding of direct criminal contempt.

While In re Oliver could be read to infer actual observation by the court is required, it also could be fairly understood as a mere acknowledgment of the fact that events occurring in open court take place within the view of the court, i.e., where the misconduct may be readily observed by the court as fact finder. Regardless, the actually-observed-by-the-court language does not suggest the trial court is somehow obligated to prove to itself observation of events that took place in open court; the trial court would know better than anyone what it did or did not see. Notably, In re Oliver approved of and relied primarily upon Cooke, wherein the United States Supreme Court plainly stated, "Where the contempt is committed directly under the eye or within the view of the court, it may proceed 'upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form[.]'" Cooke, at 535 (emphasis added) (quoting In re Terry, at 309).[8] Accordingly, the Superior Court erred in concluding the summary contempt proceedings below were improper because the trial court failed to prove to itself it personally observed the events.

In so holding, the Superior Court misapprehended the record and conflated the concept of something being "in the presence of the court," with that of it being "personally observed" by the court. See Moody, at 775 (indicating in-the-presence-of-the-court requirement was not established because record did not show court personally observed

---

[8] According to Cooke, the "important distinction" regarding whether a contemptuous event justifies the departure from the traditional view of due process requirements was simply whether the contempt occurred "in open court," i.e., "'under the eye or within the view of the court,' or 'in the face of the court,' or 'in facie curiae[.]'" Id., at 535-36. Subsequent to In re Oliver, the United States Supreme Court has continued to quote Cooke's no-need-of-evidence language with approval. See, e.g., Pounders, at 987-88 ("'There is no need of evidence … before punishment, because the court has seen the offense.'") (quoting Cooke, at 534).

contempt offenses). This Court has recognized misconduct "'occurs in the presence of the court if the court itself witnesses the conduct <u>or</u> if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice.'" <u>Falana</u>, at 129 (emphasis added) (quoting <u>Garrison</u>, at 979). Contempt, therefore, is subject to summary proceedings not only where it takes place "directly under the eye" of the court — in the sense that the court is looking directly at it — but also anywhere "within the view of the court." <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Ex parte Savin</u>, at 277 ("[T]he court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors, and witnesses: and misbehavior anywhere in such place is misbehavior in the presence of the court.").

As we have stated, "Much weight should be given to the trial court's judgment in assessing the necessities of a particular situation." <u>Stevenson</u>, at 393.[9] "A trial court's finding of contempt will not be disturbed absent an abuse of discretion." <u>Commonwealth v. Baker</u>, 766 A.2d 328, 331 (Pa. 2001) (citation omitted). We have also recognized the long-standing "'assumption that the court saw everything that went on in open court[,]'" incident to "the need for immediate penal vindication of the dignity of the court[.]'" <u>Marcone</u>, at 763 (quoting <u>Cooke</u>, at 536). With that said, a trial court has no need to contend with contemnors concerning whether the court observed conduct that occurred in open court and severely obstructed the administration of justice. Our law necessarily assumes observation for the sake of establishing and maintaining order in the courts for the benefit of all whose rights are protected thereby.

"[W]hen an individual makes a remark in the courtroom while the judge is physically present, he cannot avoid a conviction for contempt simply because the judge

---

[9] Appellees' contention that the court was dishonest regarding its observation does not, therefore, create an issue of fact to be resolved by the appellate courts.

did not hear him speak the words in question." Falana, at 129. Certainly then, where individuals incite or engage in the physical assault of a defendant's mother in open court, setting off a brawl in the courtroom and injuring a court officer in the process, those individuals cannot avoid summary contempt convictions simply by insisting the trial court itself did not observe the contemptuous conduct that occurred in front of its face. This is especially true where the trial court finds as a matter of fact that it did observe the conduct at issue — precisely what occurred in the case sub judice.

The trial court had the inherent power under Article V of the Pennsylvania Constitution to impose summary punishment for contempt, including confinement, if deemed necessary. See McMullen, at 849 (citation omitted). Appellees' physical and verbal attacks on a witness occurred in open court, caused injury to a court officer, delayed proceedings for hours, required the immediate attention of police officers and almost every free deputy sheriff in the courthouse, and necessitated additional proceedings to address the contemptuous behavior. Based on these circumstances, the trial court understandably deemed the summary finding of contempt necessary to the vindication of its dignity and authority. As a means of resolving disagreements, society has replaced fighting and violence with courts — to allow fights and violence in those same courtrooms defeats the very justification of the court. Indeed, we would be hard-pressed to construct a scenario better exemplifying the definition of misbehavior occurring in the presence of the court, obstructing the administration of justice, and therefore warranting immediate imprisonment. See 42 Pa.C.S. §§ 4132-4133. Under the aforementioned well-settled jurisprudence, the trial court acted within its authority in holding the summary proceeding at issue for appellees' acts of contempt committed in open court, and the Superior Court erred in holding otherwise.

Turning to the Commonwealth's final issue, i.e., whether a defendant is entitled to counsel and to call witnesses during summary proceedings for direct criminal contempt, we conclude without hesitation that the precedent outlined above clearly and sufficiently demonstrates a direct-criminal-contempt defendant is not entitled to call or cross-examine witnesses during such proceedings. See Pounders, at 987-88; Cooke, at 534; Ex parte Savin, at 277-78; In re Terry, at 309. Assessment of the right to counsel in such proceedings, however, necessitates closer review.

In Crawford, with a majority opinion consisting of four paragraphs and minimal analysis, this Court ruled "the summary conviction for contempt of court of a witness who was not represented by counsel cannot stand[.]" Crawford, at 54. The majority relied on Argersinger v. Hamlin, 407 U.S. 25, 37 (1972), where the United States Supreme Court held, "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial," and this Court's earlier decision in Commonwealth v. Abrams, 336 A.2d 308 (Pa. 1975).[10] However, the Crawford Court was sharply divided, with three of the seven justices dissenting on the issue of whether the accused is entitled to counsel in circumstances where contempt is committed in the presence of the court and so disrupts the court's business as to require immediate action to vindicate its

---

[10] In its entirety, Abrams consisted of two paragraphs. The Court merely described the defendant's refusal to testify, and the trial court's subsequent finding of criminal contempt and imposition of six months imprisonment; in reversing, the Court cited only Argersinger and Commonwealth v. Bethea, 282 A.2d 246 (Pa. 1971), for the proposition the uncounseled proceedings "violated due process and render[ed] the adjudication of contempt null and void." Abrams, at 309. In Bethea, the Court actually reversed the adjudications and sentences of two defendants because they did not receive jury trials. Bethea, at 247. The Court further held the trial court improperly adjudicated and then immediately sentenced a third defendant for direct criminal contempt, where the defendant was unrepresented during the proceedings; the trial court had appointed counsel whom the defendant rejected. Id., at 247-48.

authority and dignity. The dissenting justices opined collectively that <u>Abrams</u> was wrongly decided because it read <u>Argersinger</u> too broadly.[11] <u>Crawford</u>, at 56 (Pomeroy, J., dissenting); <u>id.</u>, at 59 (Nix, J., dissenting). The dissenters reasoned <u>Argersinger</u> only concerned criminal trials as they are generally understood; <u>Argersinger</u> was not a contempt case and did not mention contempt, and contempt cases had always been treated uniquely under the law. See <u>Crawford</u>, at 56 (Pomeroy, J., dissenting); <u>id.</u>, at 60-61 (Nix, J., dissenting). The dissenting justices insisted the mandatory right to counsel was incompatible with the concept of summary proceedings for direct criminal contempt, and such a requirement was not the result intended by the United States Supreme Court. <u>Id.</u>, at 61 (Nix, J., dissenting). The dissenters further noted — with respect to a summary proceeding for direct criminal contempt — the High Court had held long before <u>Argersinger</u>, "'[t]here is no need of evidence or assistance of counsel before punishment because <u>the court has seen the offense</u>.'" <u>Crawford</u>, at 57 (quoting <u>Cooke</u>, 267 U.S. at 534) (Pomeroy, J., dissenting)) (emphasis added).

Moreover, since <u>Argersinger</u>, the United States Supreme Court clarified its holding in that case was limited to instances involving <u>actual imprisonment</u>. See <u>Scott v. Illinois</u>, 440 U.S. 367, 373-74 (1979). In <u>Scott</u>, the Court held "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant <u>be sentenced to a term of imprisonment</u> unless the State has afforded him the right to assistance of appointed counsel in his defense." <u>Id.</u> (emphasis added). The Court thus clarified "actual imprisonment [is] the line defining the constitutional right to appointment of counsel." <u>Id.</u>, at 373; <u>see also</u> <u>Argersinger</u>, at 37 ("[A]bsent a knowing

---

[11] As noted by Justice Eagen in his fully joining concurring opinion, the <u>Abrams</u> Court "interpreted <u>Argersinger</u> as mandating an absolute right of counsel to any criminal defendant facing the possibility of imprisonment." <u>Crawford</u>, at 55 (Eagen, J., concurring).

and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.").

While Crawford and Abrams apply the right to counsel to contempt proceedings, they also establish that where an individual engages in contumacious conduct in open court — requiring the court to act immediately to restore order and vindicate its authority, the court may do so — assistance of counsel need only be secured prior to actual imprisonment for contempt.   Where testimony is required for the court to determine what happened before it can make a finding of contempt, a different scenario presents itself. However, the full panoply of due process protections becomes inapposite where the judge witnesses the contempt in a situation like this one, where the initial finding of direct criminal contempt occurred during a separate proceeding, prior to a subsequently scheduled sentencing hearing.   And, since the trial court appointed counsel prior to sentencing in this case, no due process violation arose during the initial summary proceedings.   There is no indication the guilt and sentencing hearings were bifurcated in this way in Crawford or Abrams, or even in Bethea.[12]   Thus, Crawford and Abrams are not only inapplicable here, but their continued vitality is actually undermined by today's decision.   Accordingly, to the extent Crawford and Abrams may be read to require the assistance of counsel during an initial summary proceeding where a defendant is found guilty of direct criminal contempt, prior to separate proceedings where the defendant is actually sentenced to imprisonment, those cases are expressly disapproved.

Because the Superior Court erroneously determined the summary-contempt proceedings were improper, it also erred in concluding appellees "should have been permitted to cross-examine the court crier, and to present their own witnesses, in an

---

[12] Indeed, Bethea expressly states both the adjudication and sentencing of at least one defendant took place at the same hearing.   Id., at 248.

adversary hearing with full due process protections."  Moody, at 775 (citation omitted). As we now hold the trial court appropriately conducted summary proceedings and appellees were sufficiently represented by counsel prior to sentencing, the order of the Superior Court is reversed.

Order reversed; case remanded for reinstatement of sentences.  Jurisdiction relinquished.

Former Chief Justice Castille and former Justice McCaffery did not participate in the decision of this case.

Messrs. Justice Baer and Stevens join the opinion.

Mr. Justice Baer files a concurring opinion in which Mr. Justice Stevens joins.

Mr. Chief Justice Saylor files a dissenting opinion in which Madame Justice Todd joins.