J-S53002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF B.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| APPEAL OF B.S., MOTHER | |
| | No. 1334 EDA 2019 |

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-CR-0002481--2018

| IN THE INTEREST OF B.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| | |
| APPEAL OF B.S., MOTHER | |
| | No. 1338 EDA 2019 |

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-CR-0002482-2018

BEFORE:  OLSON, STABILE, and NICHOLS, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 17, 2020**

Appellant, B.S. ("Mother"), appeals from the May 3, 2019 orders directing her to stay away from her sister, L.B..  L.B. serves as kinship foster placement for the two minor children ("Children") involved in these consolidated appeals.  We vacate the juvenile court's orders.

The juvenile court summarized the pertinent facts and procedural history in its July 9, 2019 opinion:

[Children] have been in care continuously for approximately 7 months with [L.B.]. Mother works at the same place as [L.B.]. [L.B.'s] children and Children attend the same school.

On November 2, 2018, the Department of Human Services ["DHS"] received two reports for this case. The reports were filed in response to an incident involving Children's Father ("Father") and Children. The first report was a child protective service report ("CPS") and the second was a general protective service report ("GPS"). The CPS report alleged that Father inflicted "injury to another person" and the GPS report alleged that Father used "inappropriate discipline" when dealing with Children. The alleged incident was that Father hit one of the Children in the face, and pushed [the] other child to the ground when she was trying to intervene. After further investigation by DHS, the GPS report was validated for "inappropriate discipline."

On November 5, 2018, a safety plan was entered which allowed Children to return home. The plan also stated that Father was not allowed to have any contact with Children. The DHS worker assigned to the case, Christopher Li, testified that there were concerns that the safety plan was being violated. The violation concerns stemmed from an allegation that Father was maintaining contact with Children. It was contended that Father was sleeping in the home and had cut up the younger child's clothes. Mr. Li testified that he questioned Mother about the allegation. In response, Mother stated that Father was not having contact with Children, but that Father did cut up the younger child's clothing.

On December 3, 2018, Children were adjudicated dependent based on a finding that the Children were "without proper care or control, subsistence, education … or other care necessary for [Children's] physical, mental, or emotional health or morals." The Mother was allowed the have "Line of Sight/Hearing Supervised visits" at the agency at Children's discretion. Mother's single case plan objectives were to gain stable housing and employment, pay the copay for Children's therapy, do ARC for parenting to make sure that the Children were up to date with

medical and dental check-ups, and meet with CUA every other week.

Mother is not allowed to interact with Children outside of supervised visits at the discretion of Children. Mother also has a restraining order for her to stay away from [L.B.] At the hearing on February 4, 2019, Mother testified that [L.B.] was trying to provoke her. At that hearing Mother indicated that she felt that [L.B.] had been "aggressive" towards her. Mother also testified that if she and [L.B.] would have to interact going forward, "...it would be problematic." Following the conclusion of a hearing on May 2, 2019, Mother exerted aggressive behavior towards [L.B.] In response, [L.B.] returned to the courtroom and requested a protective order against Mother.

Based on the foregoing testimony, this court issued a decree entering a dependency court protective order against Mother on behalf of [L.B. and her residence] pursuant to 42 Pa.C.S.A. §§ 6301, 6351.

Trial Court Opinion, 7/9/19, at 1-3 (record citations and some capitalization omitted).

Mother filed a timely appeal from the juvenile court's order. She raises a single assertion of error:

1. The trial court committed an error of law and discretion [sic] by entering a permanent protection order without providing [Mother] due process of law in that an *ex parte* hearing may be the basis of a temporary order but not a permanent order.

Mother's Brief at 7.[1]

To summarize, therefore, the juvenile court issued a protective order in favor of L.B. after Mother's alleged aggressive behavior toward L.B. shortly

---

[1] Mother's brief is not paginated, but according to the table of contents her question presented appears on page 7.

after the May 2, 2019 permanency hearing. The court relied on 42 Pa.C.S.A. §§ 6301 and 6351[2] of the Juvenile Act, but did not offer specifics as to how either subsection authorizes entry of a protective order. Regardless, Mother does not challenge the trial court's authority to enter the protective order. Mother's Brief at 9 (Summary of the Argument). She challenges entry of the order *ex parte* and without creation of a record. *Id.*

The trial court relied on **In re M.B.**, 869 A.2d 542 (Pa. Super. 2005), wherein this Court explained that due process in a dependency proceeding is less stringent than in a criminal matter. There, the appellant mother claimed the trial court deprived her of due process by granting a protective order in favor of Children and Youth Services ("CYS") regarding CYS' confidential court summary. CYS claimed mother had been providing copies of that document to witnesses, and CYS requested permission to provide the document to mother's attorney rather than mother, to prevent mother from distributing it. *Id.* at 545. The trial court granted the protective order. Mother claimed her inability to provide CYS' confidential court summary to witnesses deprived her of due process. *Id.* at 546.

In assessing mother's due process interests, this Court wrote:

_____

[2] Section 6301(a)(4) provides that one Act's purposes is to "provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." 42 Pa.C.S.A. § 6301(a)(4). Section 6351 governs a variety of issues related to the disposition of a dependent child. 42 Pa.C.S.A. § 6351.

When conducting review, we note that the needs of each situation inform our analysis and our inquiry must then be directed to the questions raised, explored, and decided ... as to what process is due. Additionally, in a dependency case, the liberty interest of [a parent] is not at stake and the risk of erroneous adjudication is so substantially mitigated by safeguards, reviews, and procedures directed toward uniting the family, that due process requires a less didactic approach than in criminal procedures. And, while a dependency proceeding is adversarial in the sense that it places the state in opposition to the parent with respect to the custody of the child ... it does not implicate the liberty interests of the parent or the child as would be the case of a defendant in a criminal action.

*Id.* at 546–47 (internal citations and quotation marks omitted). We concluded that mother's access to the court summary through her attorney and her ability to examine witnesses based on her knowledge of its contents sufficiently protected her due process interest. *Id.* at 547.

Appellant cites **In re Penny R.**, 509 A.2d 338 (Pa. Super. 1986). There, the trial court entered a Protection From Abuse ("PFA") order pursuant to the parties' agreement.[3] Later, without notice to the prohibited party (the father), the trial court altered the order to remove the father's visitation rights because of a petition for emergency placement of the child. **Id.** at 339. We concluded the trial court erred: "[H]owever well intentioned the court may have been […] a review on the record, necessarily *ex post facto*, to determine the correctness of the order, should unquestionably have been conducted." **Id.**

---

[3] The statutory provision at issue in **Penny R.**, 35 P.S. § 10185, has since been repealed. The current version of the PFA Act is codified at 23 Pa.C.S.A. § 6101, *et seq*.

- 5 -

at 340. We noted that the record contained no evidence or testimony pertaining to the order, and there was no adequate basis for appellate review, given that this Court was "provided only with vague innuendos as to why a restraining order on visitation was issued." *Id.* at 340.

We conclude trial court's reliance on *M.B.* was misplaced because, while *M.B.* noted that the process due to a parent in a dependency case is less than the process due to a criminal defendant, it did not dispense with due process entirely as did the trial court here. Moreover, we are not persuaded by the trial court's argument that no process is due because its order did not impinge on any protected liberty interest. The record reveals that Appellant and L.B. share the same employer. N.T. 2/4/19, at 20-21. Furthermore, Appellant's son, of whom she has custody, attends the same school as Children. These issues could have been addressed and clarified, had Appellant received notice and an opportunity to be heard.

We observe that our courts have permitted summary punishment for direct criminal contempt when the conduct leading to the contempt occurs in the trial court's presence. In *Commonwealth v. Moody*, 125 A.3d 1 (Pa. 2015), for example, the defendants were present in the courtroom gallery during a preliminary hearing when they physically assailed a witness and a court officer who was called in to restore order. *Id.* at 3. The trial court conducted a hearing at which the defendants were counseled but not permitted to call and cross-examine witnesses. *Id.* at 4. The court believed

no development of evidence was necessary because the events in question occurred in its presence, in accord with 42 Pa.C.S.A. § 4132(3).[4] *Id.* at 4-5. This Court reversed the trial court, reasoning that the trial court relied on the testimony of a court officer, and thus it was not sufficiently clear that the disturbance took place "in the presence of the court" in accord with § 4132(3). *Id.* at 5.

The Supreme Court disagreed, noting that it was clear from the record that the trial judge was facing the gallery when the fight broke out, and that he personally observed the defendants' behavior. *Id.* at 11. More importantly, for present purposes, the Supreme Court wrote, "courts have inherent power and statutory authority to impose summary punishment for direct criminal contempt for willful misconduct that occurs in the presence of the court and obstructs its fair and orderly process." *Id.* at 9; *see also Commonwealth v. Falana*, 696 A.2d 126 (Pa. 1997) (upholding a finding of

_____

[4] Section 4132(3) provides:

> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>
> [...]
>
> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa. C.S.A. § 4132(3).

contempt where the newly-convicted defendant said, "I'll be out one day," as he walked past the victim on his way out of the courtroom).

This case, unlike ***Moody***, does not involve willful misconduct that occurred in the presence of the court and obstructed its fair and orderly process. Appellant's alleged misconduct did not occur in the presence of the trial court and did not obstruct orderly process. It occurred after the hearing was over. We have no record of the facts because none was created. We have only the trial court's opinion, which states that Appellant exhibited aggressive behavior toward L.B. after the May 2, 2019 hearing, and that L.B. **returned** to the courtroom and requested a protective order. Trial Court Opinion, 7/9/19, at 3. Because there is no record of the facts that gave rise to the order on appeal, there is no support for the entry or an *ex parte* order with no process under the rationale of ***Moody***.

More pertinent instantly is the rationale of ***Penny R.***, in which the record contained only "vague innuendo" as to the reasons for the order, and therefore no means of conducting appellate review. Even though that case involved the PFA, not child dependency, ***Penny R.*** teaches that a minimum amount of due process is necessary to facilitate appellate review. Even in cases of direct criminal contempt in the presence of the court, such as ***Moody*** and ***Falana***, this Court was able to review the record in assessing the propriety of the trial court's action. Here, as in ***Penny R.***, the record is inadequate to facilitate appellate review.

In summary, the trial court exercised a power not expressly granted to it by statute or case law, without affording any due process to the subject of the order, without creating any record to support its action, and without giving Appellant the opportunity to raise legal objections prior to appeal. We recognize that the children's best interest is paramount in dependency cases, but we do not believe the trial court would have undermined the children's best interests by affording Appellant notice and an opportunity to be heard, either prior to the entry of the order or sometime shortly thereafter, to facilitate appellate review.

For all of the foregoing reasons, we vacate the trial court's orders.

Orders vacated.

Judge Nichols concurs in the result.

Judge Olson files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/20