J-S53002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: B.T., A MINOR

APPEAL OF: B.S., MOTHER

: IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
: No. 1334 EDA 2019

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002481-2018

IN THE INTEREST OF: B.T., A MINOR

APPEAL OF: B.S., MOTHER

: IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 1338 EDA 2019

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002482-2018

BEFORE: OLSON, J., STABILE, J., and NICHOLS, J.

DISSENTING MEMORANDUM BY OLSON, J.: **FILED APRIL 17, 2020**

The Learned Majority vacates the trial court's orders directing B.S. ("Mother") to refrain from all contact with her sister, L.B. ("Maternal Aunt"), following an incident in which Mother aggressively confronted Maternal Aunt in the hallway outside of a courtroom after a dependency hearing.[1] The

---

[1] Maternal Aunt serves as a kinship foster resource placement for Mother's two children (collectively, "the Children").

Majority takes this action because it concludes that the trial court denied Mother notice and opportunity to be heard, failed to develop a record pertaining to the order, and exercised a power that was not expressly granted by statute or case law. As I believe the court properly and permissibly exercised its power to address contemptuous conduct which threatened the orderly administration of courtroom proceedings, I would affirm the orders Mother challenges on appeal.

The orders in question were entered on May 3, 2019, after a May 2, 2019 status review hearing. Toward the conclusion of the hearing, the trial court learned that, "Mother [exhibited] aggressive behavior towards Maternal Aunt. In response, Maternal Aunt returned to the courtroom and requested a [p]rotective [o]rder against Mother." Trial Court Opinion, 7/9/19, at 3. The trial court, without notifying Mother or ensuring that notes of testimony were prepared, granted Maternal Aunt a stay-away order lasting one year from its date of entry. The order did not restrict Mother's contact or visitation with the Children, nor did it restrict Mother's right to engage in employment-related activities. Instead, the order simply directed that Mother refrain from all contact with Maternal Aunt, and further directed Mother to avoid Maternal Aunt's residence, for a one-year period. The order warned that a violation of its terms may result in a fine, imprisonment, or prosecution pursuant to 18 Pa.C.S.A. § 4952 (prohibiting intimidation of witnesses or victims). Mother's appeal followed.

Mother argues that the trial court violated her right to due process by granting Maternal Aunt a protective order *ex parte* without a hearing within ten days, thus making the order final. **See** Mother's Brief at 8-9 (unpaginated). Additionally, Mother contends that the court violated her right to due process by failing to record or transcribe the hearing that proceeded entry of the challenged order. **Id.** Essentially, Mother seeks to apply the standards set forth in the Protection From Abuse ("PFA") Act, 23 Pa.C.S.A. § 6101, *et seq.*, to the instant matter, and argues that the trial court's application of **In re M.B.**, 869 A.2d 542 (Pa. Super. 2005), was in error. **See** Mother's Brief at 8-10. Rather, Mother contends that **In re Penny R.**, 509 A.2d 338 (Pa. Super. 1986), controls. **See** Mother's Brief at 8-10.

With regard to dependency cases:

> [t]he standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

**In re N.A.**, 116 A.3d 1144, 1148 (Pa. Super. 2015). Thus, we employ an abuse of discretion standard. **In re L.Z.**, 111 A.3d 1164, 1174 (Pa. 2015).

Initially, I agree with the Majority that the "dependency court protective order" is not a statutory creation. The court points to the Juvenile Act, 42 Pa.C.S. §§ 6301, 6351, as the source of its authority. Amongst the Act's stated purposes are to provide for the care, protection, safety, and wholesome

mental and physical development of children. **See** 42 Pa.C.S. § 6301. Section 6351 of the Act governs the disposition of dependent children and grants the court wide latitude in its powers to make determinations that best serve the child's health, safety, and welfare. Nothing in the text of this statutory scheme expressly grants authority to address contemptuous conduct within the presence of the court.

While Mother argues that the stay-away order should be treated like a PFA order, with all of the due process rights which that entails, there is no authority to support this assertion. The main case she cites in support of her position, **In re Penny R.**, concerns a matter where a PFA order was entered pursuant to a petition filed under the former version of the Protection From Abuse Act, 35 P.S. §§ 10181 to 10190.2, *repealed by* 1990, Dec. 19, P.L. 1240, No. 206, § 6. **Penny R.**, 509 A.2d at 339. Similarly, I would reject the trial court's reliance on **In re M.B.**, 869 A.2d 542, 546 (Pa. Super. 2005), a case in which a protective order was issued to preserve the confidentiality of certain written records, and its reasoning that Mother's liberty interests were not violated because the best interests of the Children take precedent over Mother's liberty interests. **See** Trial Court Opinion, 7/9/19, at 4-7. Although the instant order prohibits Mother's contact with Maternal Aunt and her residence, it is not a protection from abuse order and it is not aimed at the preservation of confidential records. Accordingly, neither **In re Penny R.** nor **M.B.** are entirely pertinent.

Rather, I would find the current situation more analogous to one in which a court has acted to address contemptuous conduct that transpired in or near the courtroom. We are free to affirm a trial court's decision on any basis supported by the record and our rationale is not dependent upon our agreement with the trial court's reasoning. ***Ario v. Ingram Micro, Inc.***, 965 A.2d 1194 (Pa. 2009). I note that

> [i]n Pennsylvania, "[t]his Court has long upheld a court's power to maintain courtroom authority" by the imposition of summary punishment for contempt in appropriate cases. ***Behr v. Behr***, [695 A.2d 776, 778 (Pa. 1997)]. "[A] summary proceeding to protect the orderly administration of justice is perfectly proper[.] ... The court must be able to control those appearing before it, and must be able to use its power summarily to avoid interference with the principal matter before the court." ***Commonwealth v. Africa***, [353 A.2d 855, 865 (Pa. 1976)] (*plurality*). "Summary proceedings for contempt of court are those in which the adjudication omits the usual steps of 'the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial.'" ***Commonwealth v. Stevenson***, [393 A.2d 386, 392 (Pa. 1978)] (quoting ***Sacher v. United States***, [72 S.Ct. 451 (1952)]). Thus, "the summary contempt power has been upheld against due process attacks[.]" ***Id***. (citations omitted). Respecting due process, this Court has candidly acknowledged summary punishment for criminal contempt is a "drastic departure from our traditional view of due process[.]" ***Commonwealth v. Marcone***, [410 A.2d 759, 763 (Pa. 1980)].

***Commonwealth v. Moody***, 125 A.3d 1, 8 (Pa. 2015).

Our Supreme Court has long recognized that "acts such as jury tampering and witness intimidation that occur outside the physical presence of the court, but that interfere with its immediate business, are punishable as contempt." ***Commonwealth v. Falana***, 696 A.2d 126, 129 (Pa. 1997). Put

another way, "[m]isconduct occurs in the presence of the court if the court itself witnesses the conduct or if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice." *Id.* In *Falana*, the defendant threatened a witness who had testified against him after the conclusion of proceedings. *Id.* The Supreme Court held that not sanctioning the defendant would allow him to use the courtroom to intimidate his victim which would, in turn, potentially deter future testimony and obstruct the efficient administration of justice and demean the court's authority, even if the proceeding had concluded. *Id.* In *Moody*, the Supreme Court of Pennsylvania additionally noted that while there is a right to counsel in contempt proceedings, the court, where required to act immediately to restore order and vindicate its authority, may do so as long as the assistance of counsel is secured prior to actual imprisonment for contempt. *Moody*, 125 A.3d at 14-15.

As noted, above, this is not a situation in which Mother faced immediate imprisonment or other imminent harsh sanction for her aggressive conduct toward Maternal Aunt. Hence, the case law cited above supports the conclusion that the trial court properly exercised its inherent power to maintain courtroom authority, as well as to impose moderate sanctions for actions that occurred outside of the physical presence of the court but which threatened to interfere with its immediate business. *See*, *e.g.*, *Falana*, 696 A.2d at 129. Where such unfortunate situations arise, the law also permits

the imposition of sanctions for conduct committed after the conclusion of a proceeding. *Id.*

Here, the court entered the challenged orders following the conclusion of a status review hearing, at which it was empowered both to make decisions and enter orders to secure and safeguard the Children's health, safety, and welfare, and to maintain the authority of the court. The court found Maternal Aunt's statements regarding Mother's actions credible, and acted to prevent Mother from continuing to engage in threatening behavior toward Maternal Aunt, who was then serving as a kinship foster placement resource for the Children and who was a likely witness in future proceedings. There can be little doubt that a foster parent's personal knowledge and impressions are probative of the Children's health, safety, and welfare and that her continuing and unfettered participation in the dependency proceedings would be of utmost importance to the court and worthy of its protection. Moreover, the orders issued by the trial court were extremely limited in both scope and severity, as it imposed no incarceration, no fines, no prohibition or restriction on Mother's employment, no impairment of Mother's visitation rights with the Children, and no restriction on Mother's movement other than to stay away from Maternal Aunt. Although Mother's outburst toward Maternal Aunt occurred in a hallway, and not in the courtroom, the misbehavior was "so near [the courtroom] as to interfere with the immediate business of the court." *Marcone*, 410 A.2d at 762. Hence, I would hold that the trial court acted within its discretion in finding that Mother's conduct posed a significant

- 7 -

disruption to ongoing dependency proceedings since her aggressive behavior toward Maternal Aunt, a key witness in the dependency litigation, clearly undermined the court's authority and the administration of orderly proceedings. *See Falana*, 696 A.2d at 129. In analogous contempt proceedings, a court may enter such orders even after the proceedings conclude, and without the usual due process concerns of a review hearing or trial. *Moody*, 125 A.3d at 8-15; *Falana*, 696 A.2d at 129. Accordingly, I find Mother's arguments to be unavailing and would affirm the trial court's orders.