J. S37043/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| AQUIL JOHNSON, | : | No. 2478 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered December 17, 2012,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. MC-51-MD-0003664-2012

BEFORE: SHOGAN, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED DECEMBER 28, 2020**

Aquil Johnson, ***pro se***, appeals ***nunc pro tunc*** from the December 17, 2012 aggregate judgment of sentence of 6 to 12 months' imprisonment imposed after the trial court found him guilty of two counts of contempt of court[1] during his ***Grazier***[2] hearing. This sentence was ordered to run consecutive to the 12½ to 25-year sentence appellant is currently serving in an unrelated matter, at CP-51-CR-0005617-2009. After careful review, we remand this matter for the limited purpose of allowing the sentencing court to

---

[1] 42 Pa.C.S.A. § 4132(3). As discussed, ***infra***, the sentencing order incorrectly states that appellant was sentenced pursuant to Section 4137(a)(1).

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

correct a clerical error in the sentencing order, and affirm appellant's judgment of sentence in all other respects.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [O]n September 25, 2008, [a]ppellant and his conspirator, Matthew Smith, visited their acquaintance and marijuana dealer, Michael Wilson. Mr. Wilson let the two in through the backdoor of his residence at 6111 Jefferson Street, Philadelphia and welcomed them into his living room. While [a]ppellant distracted Mr. Wilson, Mr. Smith positioned himself on the other side of Mr. Wilson and shot him in the back of the head. Appellant and [Smith] then grabbed a bag of marijuana off of the living room table, laughed at Mr. Wilson, and left him for dead. Responding officers took Mr. Wilson to the University of Pennsylvania Hospital. He then identified [a]ppellant and Mr. Smith out of a photo array, and consistently identified both of them as his assailants. As a result of their vicious attack, Mr. Wilson suffered dangerous swelling to his brain and had a portion of his skull surgically removed. Appellant was arrested later that same day.
>
> On January 11, 2013, a jury sitting before the Honorable Chris R. Wogan convicted [a]ppellant of attempted murder, aggravated assault, and criminal conspiracy.[3] On March 15, 2013, [a]ppellant was sentenced to an aggregate term of 30 [to] 60 years' incarceration. [The record reflects that on May 29, 2019, a panel of this court affirmed appellant's convictions but vacated appellant's judgment of sentence and remanded for resentencing because his sentences for conspiracy and attempted murder should have merged. **See *Commonwealth v. Johnson***, ___ A.3d ___, 2019 WL 2317695, at *7 (Pa.Super. 2019) (unpublished memorandum).]

---

[3] 18 Pa.C.S.A. §§ 901(a), 2702(a), and 903(a)(1), respectively.

> In the lead up to trial, [a]ppellant moved to proceed *pro se*. At the **Grazier** hearing on December 17, 2012, [a]ppellant was twice found to be in contempt of court. [The trial court] sentenced [appellant] to 3 [to] 6 months' incarceration for each finding of contempt, to be served consecutively. On December 24, 2012, [a]ppellant filed a defective *pro se* notice of appeal with the wrong docket number and did not later perfect his appeal. Over one and a half years late, [a]ppellant filed a *pro se* PCRA[4] [p]etition on June 30, 2014. Appointed counsel filed an [a]mended PCRA [p]etition on July 20, 2017 and the Commonwealth responded with a [m]otion to [d]ismiss the PCRA [p]etition on October 30, 2017 (docketed November 3, 2017). Appellant filed a second [a]mended PCRA [p]etition on his own behalf on November 13, 2017. On August 16, 2018, the Honorable Sean F. Kennedy ordered [a]ppellant's direct appeal rights to be reinstated *nunc pro tunc*.

Trial court opinion, 1/9/20 at 1-3 (citations to notes of testimony and original footnote omitted).

On August 17, 2018, appellant's then-counsel, Zak T. Goldstein, Esq., filed a timely notice of appeal on appellant's behalf. Thereafter, on April 18, 2019, appellant filed a motion indicating his desire to proceed *pro se*, and the trial court scheduled a **Grazier** hearing. Following the **Grazier** hearing, appellant was granted leave to proceed *pro se* on September 23, 2019. Appellant filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), on October 9, 2019. On January 9, 2020, the trial court filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

---

[4] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

I.     Was [sic] appellant's Pennsylvania and United States constitutional rights to due process violated when Judge Wogan charged, convicted and sentenced the appellant for two counts of contempt of court without any prior notice, an opportunity to be heard or an opportunity to conform his conduct which was required pursuant to *In Re Mandell*, 414 A.2d 1013 n.7 (Pa.1980)?

II.     Was appellant's Pennsylvania and United States constitutional rights to due process violated where the evidence was insufficient to establish beyond a reasonable doubt that (1) appellant acted with intent to obstruct the proceedings and or (2) that the administration of justice was "actually and significantly disrupted" by either count of contempt?

III.     Was appellant's Pennsylvania and United States constitutional rights to due process violated when the court failed to reinstate the appellant's post-sentence motion rights as requested where, *Commonwealth v. Liston*, 977 A.2d 1089 (Pa. 2009)[,] was inapplicable to the appellant where his appeal rights were reinstated due to government interference instead of ineffective assistance of counsel. Even if *Liston* was applicable, [] appellant plead and proved he was entitled to his motion rights back for the same reason he was entitled to his appeal rights back?

IV.     Should leave be granted to allow [] appellant to raise his judicial bias claim against [J]udge Wogan in this direct appeal instead of remanding back to the lower court to allow the appellant to file post-sentence motions to preserve the claim where, further delay in resolution of this case would cause a manifest injustice. If leave is granted to raise this claim without having to go back and present it in a post-sentence motion, the appellant's is [sic] raising the claim that his rights to due process

- 4 -

> was violated where Judge Wogan showed bias or the potential for bias to [sic] high too [sic] be constitutionally tolerable?

Appellant's brief at 4-5 (extraneous capitalization omitted).

Preliminarily, we note that the sentencing order indicates that appellant was sentenced pursuant to 42 Pa.C.S.A. § 4137(a)(1), which pertains to the contempt powers of magisterial district judges. However, the court has indicated on the record that it intended for appellant to be convicted and sentenced for contempt of court under Section 4132(3), and the wrong statute noted on the sentencing order was a clerical error. (**See** notes of testimony (CP-51-CR0001587-2009), 3/15/13 at 16; trial court opinion, 1/9/20 at 4-5.) Accordingly, we remand this matter for the limited purpose of allowing the sentencing court to correct this error. **See**, **e.g.**, **United States v. James**, 642 F.3d 1333, 1343 (11th Cir. 2011) (holding that, "[b]ecause the written judgment incorrectly states that James was convicted under [21 U.S.C.] § 841(b)(1)(B)(iii), rather than § 841(b)(1)(C), we remand for the limited purpose of correcting the clerical error"), **cert. denied**, 565 U.S. 958 (2011). We now turn to the merits of appellant's claims.

## I. Due Process Challenge

Appellant first argues that his due process rights were violated when the trial court charged, convicted, and sentenced him for two counts of contempt

of court without any prior notice, an opportunity to be heard, or an opportunity to conform his conduct to court norms. (Appellant's brief at 12-15.)

Our review of the record reveals that appellant failed to properly raise this due process challenge before the trial court or otherwise object on this basis during the December 17, 2012 hearing. Accordingly, appellant's claim could be found waived on this basis alone. **See Commonwealth v. Allen**, 2015 WL 6957090, *13 (Pa.Super. 2015) (unpublished memo); **see also** Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). In any event, we find that appellant's due process claim lacks arguable merit.

As discussed, appellant was convicted of two counts of direct criminal contempt of court for misconduct that (1) occurred during the course of his **Grazier** hearing; and (2) was personally observed by Judge Wogan. Our supreme court has long recognized the inherent power of a court to impose summary punishment for misconduct that occurs in its presence, and that this power does not offend our notions of due process:

> In Pennsylvania, [t]his Court has long upheld a court's power to maintain courtroom authority by the imposition of summary punishment for contempt in appropriate cases. [A] summary proceeding to protect the orderly administration is perfectly proper[.] . . . The court must be able to control those appearing before it, and must be able to use its power summarily to avoid interference with the principal matter before the court. Summary proceedings for contempt of court are those in which the adjudication omits the usual steps of the issuance of process, service of complaint and answer, holding hearings,

> taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial. **Thus, the summary contempt power has been upheld against due process attacks**[.] . . .
>
> . . . .
>
> . . . . Where the contempt is committed directly under the eye or within the view of the court, it may proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form[.]

***Commonwealth v. Moody***, 125 A.3d 1, 8, 11-12 (Pa. 2015) (citations and internal quotation marks omitted; brackets in original; emphasis added).

Based on the foregoing, even if appellant had properly preserved his due process challenge, we would find no merit to his claim that the trial court violated his due process rights by finding him in contempt of court at the ***Grazier*** hearing.

## II. Sufficiency of the Evidence

Appellant next argues that there was insufficient evidence to sustain his convictions for criminal contempt of court because "evidence was insufficient to establish beyond a reasonable doubt that (1) [he] acted with intent to obstruct the proceedings[, or] (2) that the administration of justice was actually and significantly disrupted[.]" (Appellant's brief at 16.) We disagree.

Our standard of review in assessing whether there was sufficient evidence to sustain a conviction is well settled:

> [W]e must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Reese*, 156 A.3d 1250, 1257-1258 (Pa.Super. 2017) (citation omitted), *appeal denied*, 173 A.3d 1109 (Pa. 2017).

"In reviewing an appeal from a contempt order, we place great reliance on the discretion of the trial judge. We review the record to determine if the facts support the trial court's decision and will reverse the trial court only if there is a plain abuse of discretion." *In re Arrington*, 214 A.3d 703, 707 (Pa.Super. 2019) (citation omitted).

Criminal contempt is codified in Section 4132, which provides, in relevant part, that the courts of the Commonwealth have the power to "impose summary punishments for contempts of court" in cases where there is "[t]he misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." 42 Pa.C.S.A. § 4132(3). Thus, "[t]o sustain a conviction for direct criminal contempt under [Section 4132(3)], there must be proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." *Moody*, 125 A.3d at 5 n.4 (citation omitted).

Upon review, we find that there was ample evidence from which the trial judge could conclude that appellant was guilty of contempt of court. The evidence established that during the December 17, 2012 *Grazier* hearing, appellant repeatedly interrupted Judge Wogan as he was attempting to conduct the colloquy and failed to listen to instructions from the court. At one point during the hearing, Judge Wogan instructed appellant that he "ha[s] to answer these questions so [the trial court] can determine whether [he can] represent [him]self." (Notes of testimony, 12/17/12 at 3.) However, appellant disregarded Judge Wogan's warning and continued to voice his disapproval with both his court-appointed attorney and the prospect of representing himself. (*Id.*) Judge Wogan cautioned appellant that he could elect to represent himself in this matter or proceed with his current court-appointed counsel, but that there was no option to have a new attorney appointed in this matter. (*Id.* at 3-4.) This led to the following exchange whereby appellant again interrupted Judge Wogan's colloquy and resulted in his being held in contempt of court:

> A. But regardless of what you say, even in the courtroom with me, [Attorney Joseph D. Lento's] not going to represent me whether I keep him or not.
>
> Q. Why isn't he?
>
> A. Because he's not going to do what I asked him to do. Like the thing is I want to do my defense and he's not going to present it.

> Q. Okay. You need to start answering my questions and not go off on a speech.
>
> A. I understand that, Your Honor, but --
>
> Q. You will not talk about anything else. You're completely misreading about the law.
>
> You do understand that you have a right to be represented by counsel, correct?
>
> A. Yes.
>
> Q. [Attorney] Lento at this point was appointed to represent you, since you cannot afford an attorney, correct?
>
> A. Yes.
>
> Q. Now, let's look for a list. This is number one on our list. Here's what can happen if you --
>
> **A. I'm getting railroaded, that's what's happening.**
>
> Q. I'm holding you in contempt for disrupting the operations of my courtroom.

*Id.* at 4-5 (emphasis added).

The record further reflects that Judge Wogan held appellant in contempt of court a second time after he repeatedly feigned misunderstanding Judge Wogan's explanation of the sentencing guidelines in an attempt to delay and obstruct the operations of the courtroom:

> Q. All right. Do you understand that if you're found guilty of attempted murder here, you could be sentenced to 20 to 40 with a pretty substantial fine, do you understand that?
>
> A. No, I don't understand that.

Q. How come? You don't understand that the maximum period of incarceration is 40 year [sic] for this and a maximum fine of --

A. No, I don't. Can you explain?

Q. Well, it's pretty simple --

A. Just because I make it to trial, doesn't mean I'm guilty of those.

Q. That's considered a trial issue. I don't know whether you will be found guilty or not that [sic]. That's for a jury to decide. If you don't understand what I'm telling you, it's very simple. I can send you to prison for 20 to 40 years if you are found guilty of attempted murder. Do you understand that if you're found guilty of attempted murder you can serve 20 to 40 years on that. Do you understand that?

A. I don't understand what's going on right now.

Q. Okay. What is it that you don't understand. I've explained --

A. None of this. I don't understand any of this.

Q. So I take it you withdraw your _**pro se**_ motion and you'd like to continue with [Attorney] Lento?

A. I never said that. I don't understand what you're telling me.

Q. You don't understand the very, very simple statement that if, only if, you're found guilty, you could be facing up to 40 years for attempted murder[?]

A. I don't know what's going on in this courtroom. I don't. This is my first time in this court room,

> first time meeting you, I don't understand what's go [sic] on.
>
> Q. **All right. I'm holding you in contempt for obstructing the operations of my courtroom. I sentence you to serve another 3 to 6 months. That's consecutive to the earlier 3 to 6 months.**
>
> **Do not lie to me when I'm asking you a very simple question. You most certainly understand that you can get 40 years for attempted murder. Do not lie to me again and delay the operations of this courtroom.**

*Id.* at 5-7 (emphasis added).

Based on the foregoing, we find that there is ample evidence that appellant acted with the intent to obstruct the trial court's resolution of his own ***Grazier*** hearing, and the administration of justice was actually obstructed multiple times. ***See Moody***, 125 A.3d at 5 n.4. Accordingly, appellant's claim that there was insufficient evidence to sustain his convictions for two counts of contempt of court must fail.

## III. Reinstatement of Post-Sentence Motion Rights *Nunc Pro Tunc*

Appellant next argues that his due process rights were violated when the PCRA court failed to automatically reinstate his post-sentence motion rights ***nunc pro tunc***, following the reinstatement of his direct appeal rights ***nunc pro tunc***, due to alleged "governmental interference." (Appellant's brief at 24.) We disagree.

This court has recognized that the reinstatement of the right to file a direct appeal does not carry with it the automatic right to file a ***nunc pro tunc*** post-sentence motion. ***Liston***, 977 A.2d at 1093-1094. On the contrary, the PCRA court must expressly grant the right to file a ***nunc pro tunc*** post-sentence motion. ***Commonwealth v. Capaldi***, 112 A.3d 1242, 1245 (Pa.Super. 2015). To the extent appellant challenges the PCRA court's failure to do so, we find that this issue is of no matter since we did find any of appellant's claims waived based upon his failure to file timely post-sentence motions. On the contrary, appellant waived his due process challenges by failing to properly raise them before the trial court during the December 17, 2012 hearing.[5] ***See In re Martorano***, 346 A.2d 22 (Pa. 1975) (due process challenge to contempt proceeding waived because not raised at contempt hearing).

**IV. Judicial Bias**

In his final claim, appellant contends that "Judge Wogan showed bias or the potential for bias to [sic] high to be constitutionally tolerable" by "injecting himself in the accusatory process and expressing a prejudgment of guilt" during the course of the December 17, 2012 ***Grazier*** hearing. (Appellant's

---

[5] The Commonwealth has indicated that it is not opposed to a remand to allow appellant the opportunity to file post-sentence motions ***nunc pro tunc***. (***See*** Commonwealth's brief at 16.) In light of our resolution of this issue, however, we decline to do so.

brief 33-35.) Our review of the record, however, reveals that appellant failed to properly preserve this claim before the trial court.

It is well settled that "[j]udicial bias may not be raised for the first time during post-trial proceedings." ***Crawford v. Crawford***, 633 A.2d 155, 160 (Pa.Super. 1993) (citation omitted). On the contrary, a party seeking recusal or disqualification on the basis of judicial bias or impartiality "must raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." ***Commonwealth v. Stafford***, 749 A.2d 489, 501 (Pa.Super. 2000) (citation and internal quotation marks omitted), ***appeal denied***, 795 A.2d 975 (Pa. 2000). The failure to timely move for a judge's recusal after the facts allegedly establishing bias come to a defendant's attention renders the judicial bias claim waived. ***See Commonwealth v. Johnson***, 719 A.2d 778, 790 (Pa.Super. 1998), ***appeal denied***, 739 A.2d 1056 (Pa. 1999).

Instantly, the record reflects that appellant did not move for recusal of Judge Wogan. Because appellant failed to raise his claim of judicial bias at the earliest possible opportunity, it is waived. ***Id.***; ***see also*** Pa.R.A.P. 302(a).

Judgment of sentence affirmed. Case remanded for the correction of a clerical error in the sentencing order. Jurisdiction relinquished.

Shogan, J. joins this Memorandum.

Nichols, J. concurs in the result.

J. S37043/20

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/28/2020</u>