J-A12039-23

2023 PA Super 255

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BASILE OUTLAW :
:
Appellant : No. 1788 EDA 2022

Appeal from the Judgment of Sentence Entered June 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-MD-0000031-2022

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.: **FILED DECEMBER 6, 2023**

Basile Outlaw appeals the judgment of sentence imposed for his
conviction for direct criminal contempt for Outlaw's conduct in open court.[1] He
challenges the sufficiency of the evidence. We affirm.

Outlaw attended a hearing on a motion to suppress, on June 16, 2022,
as a spectator. As the judge finished announcing her findings on the motion,
Outlaw stood up and yelled, "The judge is a cocksucker." N.T., Contempt
Hearing, 6/16/22, at 10.[2] Outlaw left the courtroom, and the deputy sheriff
went to look for him. Outlaw later voluntarily returned, and the sheriff placed
him in custody. *Id.* at 10-11.

---

[1] 42 Pa.C.S.A. § 4132(3).

[2] ***See also*** N.T., 6/21/22, at 4.

After the suppression hearing, the court held another hearing that involved Outlaw. After swearing Outlaw in, the court asked him, "I take it you're not too happy with the outcome of this motion?" *Id.* at 4. Outlaw replied, "Uh, I'm not really sure how everything goes, but no." *Id.* at 4-5. The court then stated "Yes. Apparently, you think I'm a cocksucker." *Id.* at 5. Outlaw replied that he was upset and that "it's more a reference to the cop itself." *Id.*

The court then called the deputy sheriff, Deputy Kevin Smith, who was present in the room during the motion, to testify. *Id.* at 5, 6. Deputy Smith stated that after the judge made her decision on the motion to suppress, Outlaw stood up and yelled, "The judge is a cocksucker." *Id.* at 6. Outlaw maintained that he did not say "'the judge,' specifically." *Id.* The court then took a brief recess to obtain counsel for Outlaw. *Id.* at 8. When the proceeding resumed, the court placed a summary of the facts on the record and said it would be holding a contempt hearing. *Id.* at 10-11. The judge stated:

> Mr. Outlaw made a statement directed towards me, indicating the judge, quote, "The judge is a cocksucker."
>
> He was initially - - and then he left the courtroom and came back to the courtroom, at which time he was apprehended by the sheriff.
>
> Based upon that outburst and statement directed to me, overheard by me and the sheriff, I am holding or I will be holding a contempt hearing.

***Id.*** Outlaw's counsel stated that she "concede[d[3]] this contempt, the direct contempt, under ***Commonwealth v. Moody***."[4] ***Id.*** at 11. The court then continued the contempt hearing and set Outlaw's bail at $75,000. ***Id.*** at 11-12.

Outlaw filed a petition for writ of *habeas corpus* arguing, in part, that his conduct did not intend to nor did it actually interrupt or obstruct the proceedings. ***See*** Petition for Writ of *Habeas Corpus*, filed 6/17/22, at ¶ 8.

At the next hearing, the court placed on the record its findings of fact. N.T., 6/21/22, at 4. The court said that after Outlaw's outburst, it stopped the proceeding and asked, "What did you say?" ***Id.*** The court stated that Outlaw replied, "[N]ever mind," and left the courtroom. ***Id.*** A sheriff went after him but could not find him, and "[s]ome discussions were held regarding the outburst, which interrupted the proceeding." ***Id.*** at 5. The court stated that Outlaw then returned to the courtroom and was placed in custody.

The court afforded Outlaw an opportunity to speak on his own behalf, and he expressed remorse. ***Id.*** at 16. He said that when he returned to the courtroom on the day in question, he was "coming back to apologize for the outburst and disrespect." ***Id.*** at 18. Outlaw's counsel stated that Outlaw was

---

[3] We will not treat counsel's "concession" as a bar to appellate review of Outlaw's sufficiency claim. Doing so would render the statement tantamount to a guilty plea, and nothing of record shows that Outlaw himself decided to concede guilt. ***See Commonwealth v. Meehan***, 235 A.3d 1284, 1288 (Pa.Super. 2020).

[4] ***See Commonwealth v. Moody***, 125 A.3d 1 (Pa. 2015).

"apologetic" and asked the court to allow Outlaw to be released. ***Id.*** at 6, 18. The court imposed a sentence of 15 to 30 days' incarceration with credit for time served. This timely appeal followed.

Outlaw raises one issue in this appeal: "Did the trial court err in finding [Outlaw] guilty of direct criminal contempt because the evidence was insufficient to establish the elements of the offense because it did not in any way, let alone any significant way, obstruct the proceedings?" Outlaw's Br. at 3.

"Direct criminal contempt consists of misconduct in the presence of the court or misconduct so near thereto as to interfere with the immediate business of the court or disobedience to the lawful process of the court." ***In re Campolongo***, 435 A.2d 581, 583 n.4 (Pa. 1981).[5] "[I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs." ***Williams***, 753 A.2d at 861(citation omitted). Our review is confined

---

[5] ***See also Commonwealth v. Patterson***, 308 A.2d 90, 92 (Pa. 1973) ("'A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily[.]'" (quoting ***Knaus v. Knaus***, 127 A.2d 669, 671 (Pa. 1956)); ***Commonwealth v. Williams***, 753 A.2d 856, 861 (Pa.Super. 2000).

to examining the record to determine if the facts support the trial court's decision. *Id.*[6]

Pennsylvania courts have "inherent power and statutory authority to impose summary punishment for direct criminal contempt[.]" *Moody*, 125 A.3d at 9. The applicable statutory provision empowers courts "to issue attachments and to impose summary punishments for" certain circumstances, including "[t]he misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." 42 Pa.C.S.A. § 4132(3). A conviction for direct criminal contempt under Section 4132(3) requires "proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." *Moody*, 125 A.3d at 5 n.4 (citation omitted).

Outlaw concedes that there was sufficient evidence of the first three elements – misconduct in the presence of the court with the intent to obstruct the proceedings. He only challenges the sufficiency of the evidence to establish the fourth element: the obstruction of the administration of justice. *See* Outlaw's Br. at 22-24. He maintains that the record from the underlying suppression hearing does not show that the court had to stop the suppression proceeding or that the matter was paused, delayed, or altered due to Outlaw's conduct. *Id.* at 26. He also argues that his conduct did not "demonstrate a refusal to accept the court's power to decide the motion[.]" *Id.* at 36. He

---

[6] *See also Commonwealth v. Mutzabaugh*, 699 A.2d 1289, 1292 (Pa.Super. 1997).

claims that his actions did not disrupt the court from doing its job and that there is no evidence that he refused to comply with the court's orders or warnings to him. [7]

The Commonwealth agrees that Outlaw's outburst did not constitute an obstruction of the administration of justice. It concedes that there was an interruption in the proceedings but is of the opinion that the interruption was "*de minimis.*" Com. Br. at 10. It argues that "the hearing on the motion to suppress was adjourned in a timely manner and that the proceedings only continued as necessary to locate[] an attorney to represent defendant and to hold his contempt hearing." ***Id.*** at 9.

Here, the record of the suppression hearing shows the following exchange as the court rendered its decision on the suppression motion. It does not record Outlaw's outburst.

> THE COURT: The [c]ourt finds that the weapon that was found in the vehicle was in plain view. The motion to

---

[7] Outlaw makes a further argument that only "where the defendant's actions directly undermined the court's authority by encouraging others to disrupt proceedings or ignore orders is contempt sustained." Outlaw's Br. at 33. That contention, as we understand it, goes to the misconduct element, which Outlaw has conceded. ***See Commonwealth v. Falana***, 696 A.2d 126, 129 (Pa. 1997) (Court rejecting appellant's claim challenging criminal contempt conviction that his statement was not made in the presence of the court and concluding that "[m]isconduct occurs in the presence of the court if the court itself witnesses the conduct or if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice") (citation omitted). Insofar as he discusses the treatment of the obstruction element in ***Commonwealth v. Mutzabaugh***, 699 A.2d 1289 (Pa.Super. 1997), we find that case highly apposite here, as explained below. ***See*** Outlaw's Br. at 35-36.

> suppress the evidence, the statement provided by the defendant in this case, is denied.
>
> How are we proceeding at this time?
>
> Are we moving forward with a trial, a jury, or a plea?
>
> [Defense Counsel]: What I would like – and I know it's 4:35, Your Honor, so I would need to speak with my client and give him his options in terms of a jury, a waiver or a potential for a recusal.
>
> THE COURT: Request for recusal would be a jury demand.
>
> [Defense Counsel]: Understood.
>
> THE COURT: Okay.
>
> [Defense Counsel]: So may I.
>
> THE COURT: I'll give you five minutes.
>
> [Defense Counsel]: Okay.
>
> (Brief recess taken.)

N.T., Motion to Suppress Hearing, 6/16/22, at 102-103. When counsel returned, the court continued the case for the defendant in the underlying case to make a decision. The transcript ends with counsel stating, "Thank you thank you [sic] for courtesy. I just found the ask [sic] you stick around for moment on another issue, just in case." *Id.* at 104.

As discussed above, after the court made its findings on the suppression motion, it held a contempt hearing and explained that Outlaw stood up and it heard Outlaw yell, "The judge is a cocksucker." N.T., Contempt Hearing, 6/16/22, at 10. At the hearing on the *habeas* petition, the court provided the following facts,

> [The trial judge] stopped the proceeding and stated, What did you say? And he said, never mind. I'm leaving. I'm

- 7 -

> leaving, and proceeded to walk out the door. I inquired of the sheriff if he could go and stop him. The sheriff and my – I believe a member of [the] court staff, the court officer, also proceeded outside, but Mr. Outlaw could not be found. Some discussions were held regarding the outburst, which interrupted the proceeding.
>
> Shortly, thereafter, Mr. Outlaw returned to the courtroom. He was pointed out and the sheriff then took him into custody.

N.T., Contempt and Sentencing Hearing, 6/21/22, at 4-5. Outlaw did not object to the summary.

An obstruction of the administration of justice occurs where the conduct at issue "significantly disrupt[s] judicial proceedings," either by "actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority." *Williams*, 753 A.2d at 863 (citation and emphasis omitted). While "[n]either injudicious remarks nor affronts to the dignities or sensibilities of the court," without more, constitute an obstruction to the administration of justice, the element is met where there has been a "significant disruption" of proceedings. *Mutzabaugh*, 699 A.2d at 1293.

The requisite "significant disruption" can be met in varied circumstances, including those occurring "even [after] the judicial proceeding has concluded." *Falana*, 696 A.2d at 129. In *Falana*, the conduct at issue occurred at a sentencing hearing, after the court had pronounced sentence but while the judge was still on the bench. As the sheriffs were taking the defendant from the courtroom, he said to the victim, who had just testified against him, "I'll be out one day." *Id.* at 127-28. The Pennsylvania Supreme

Court rejected the defendant's argument that he had not obstructed the administration of justice because he made the remark after the sentencing hearing had ended. The Court found it sufficient that "[t]hrough his words" he had "belittled the trial court's attempt to administer justice and protect" the victim. *Id.* at 129. It explained, "To have permitted the Appellant to use the courtroom to intimidate his victim, and thereby possibly deter others from testifying in the future, would clearly obstruct the efficient administration of justice and demean the court's authority." *Id.*

Similarly, in *Williams*, this Court sustained a finding of direct criminal contempt for conduct that occurred after the court had finished sentencing. There, as the defendant was being led from the courtroom, "he apparently elected to express his dissatisfaction" with his sentence "by raising his middle finger and stating, 'F--k You'" to the judge. *Williams*, 753 A.2d at 859. We pointed out that "[c]ourt proceedings are concluded after the defendant leaves the courtroom, the trial judge goes to the next case or adjourns court and leaves the courtroom." *Id.* at 863 (quoting *Mutzabaugh*, 699 A.2d at 1293). The court concluded the appellant's conduct took place during a judicial proceeding, reasoning that although the court had just pronounced the sentence, the judge had not left the courtroom or moved on to another matter. *Id.* We further found that the appellant's conduct obstructed justice, noting that the obstruction element can be shown by "prejudice to the preservation of the court's orderly procedure and authority." *Id.* (citation and emphasis omitted). We found that standard satisfied in *Williams* because the

defendant's "reaction to the [c]ourt's imposition of sentence in open court was a clear effort on his part to brazenly demonstrate his repudiation of the [c]ourt's sentencing choice." *Id.* We stressed that if the court had been unable to summarily punish the defendant's misbehavior, "it would have eroded the [c]ourt's authority in the eyes of all those present":

> The ability to issue a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy.

*Id.* (quoting *Commonwealth v. Martorano*, 563 A.2d 1193, 1200 (Pa.Super. 1989)).

In another case similar to the present case, we found sufficient an interruption in which a criminal defendant used profane language toward the judge and then attempted to leave the courtroom, requiring a deputy sheriff to chase after the defendant. *Mutzabaugh*, 699 A.2d at 1290. In *Mutzabaugh*, while the court was colloquying the defendant in a criminal matter, the defendant became enraged and claimed he had been treated unfairly. The judge said, "We're done," and the defendant got up and started toward the door. *Id.* As he passed the judge, he said, "You can go to hell. Fuck you." *Id.* A deputy sheriff pursued him and caught him. We considered the defendant's remark, coupled with his attempt to leave the courtroom, sufficient to establish a significant disruption. We explained that "it was

necessary for a deputy sheriff to pursue appellant and prevent his exit." ***Id.*** at 1293.

In contrast, where the defendant has not caused any disruption, a finding of direct criminal contempt cannot stand. For example, in ***Behr v. Behr***, 695 A.2d 776, 777 (Pa. 1997), a *pro se* party in a child custody and support matter left in the courtroom a storage box that had the word "DEATH" written on its lid. It had been under counsel's table during the hearing but the judge had not seen it until a member of courtroom staff called it to his attention after the hearing. ***Id.*** at 777-78. The judge took testimony, but no one testified to seeing the word on the box lid during the original hearing. ***Id.*** at 778.

The Supreme Court found the evidence insufficient to prove direct criminal contempt because the "behavior [had] fail[ed] to disrupt courtroom proceedings[.]" ***Id.*** at 777. To the extent the trial court had found a significant disruption based on its reconvening of the hearing and the sheriff's search of the box, the Court found that reliance unavailing. It explained that if a court's investigation of alleged misconduct were sufficient, then in every such case where the court has investigated misconduct, the obstruction element of direct criminal contempt would "automatically" be met. ***Id.*** at 779.

Similarly, a momentary or transient disruption, without more, is insufficient. In ***Commonwealth v. Rubright***, 414 A.2d 106, 107 (Pa. 1980), the court overruled an objection and asked the attorney making the objection if he understood "the difference between hearsay for truth and falsity[.]" ***Id.***

The lawyer replied, "Yes I do. Do you understand it, Your Honor?" *Id.* The court responded that it would deal with counsel's "impertinence" later, and proceeded with the hearing. The Supreme Court found the evidence insufficient to prove direct criminal contempt. It explained that counsel's remarks were "of momentary nature" and the Court did "not find the progress of the hearing to have been impeded thereby." *Id.* at 110.

Likewise, in *Williams v. Williams*, 721 A.2d 1072, 1074 (Pa. 1998), a mere momentary disruption was insufficient. There, when the trial judge sustained opposing counsel's objection, an attorney representing himself in a custody dispute said under his breath, "He's such a [f------- a------]." *Id.* at 1073, 1074 (alteration in *Williams v. Williams*). The trial judge did not hear the comment until opposing counsel called it to his attention. The court then briefly took the testimony of two witnesses about the remark and proceeded with the custody hearing. Afterward, it held the attorney in direct criminal contempt. The Supreme Court concluded that the remark had caused no significant disruption as there had been only a "momentary break in the proceedings." *Id.* at 1074 (quoting *Williams v. Williams*, 681 A.2d 181, 183 (Pa.Super. 1996)). The Court concluded that "a single remark made 'under [the appellant's] breath,' did not rise to the level of criminal contempt." *Id.* at 1075.

Other cases are in a similar vein. In *In re Campolongo*, 435 A.2d at 582, the only identifiable misconduct preceding the contempt citation was counsel's rhetorical question, while objecting to opposing counsel's

examination of a witness, "Is there any reason why he's hostile to her?" The Supreme Court found an insufficient basis for a finding of direct criminal contempt because other than a short recess, there was "no disruption of the proceedings." *Id.* at 584. Similarly, in *Meehan*, 235 A.3d at 1290, this Court found that despite an attorney's "laughter and snide comments," the judge proceeded with the matter at hand without significant disruption.

Here, the record supports the finding of direct criminal contempt. The court took evidence on the day of the contempt demonstrating that Outlaw called the judge an obscene name while the judge was on the bench, in a voice loud enough for the judge and the deputy sheriff to hear and then left the courtroom. At the continued hearing, the court stated the incident occurred as it was concluding its business for the day, that it asked, "What did you say?," and that it stopped what it was doing in response. Outlaw did not object to the court's statement of the facts, including that the judge asked, "what did you say," and stopped the proceedings. Here, the judge "observed . . . with [her] own eyes what happened," which "is sufficient support for a finding of direct criminal contempt." *Moody*, 125 A.3d at 11. Accordingly, the evidence was sufficient to find Outlaw's conduct obstructed the administration of justice.

Moreover, even assuming there was no discernable "break" in the suppression proceeding, the evidence was still sufficient. Criminal contempt is available for "such conduct as created an open threat to the orderly procedure of the court and such flagrant defiance of the person and presence of the judge

before the public that, if not instantly suppressed and punished, demoralization of the court's authority will follow." *Id.* at 9 (quoting *Commonwealth v. Garrison*, 386 A.2d 971, 976 (Pa. 1978)) (plurality) (quoting *Jessup v. Clark*, 490 F.2d 1068, 1071 (3d Cir.1973)).

Outlaw's conduct was of just such a character. Outlaw used profanity toward the trial judge in open court. The judge heard the comment while she was still on the bench, finishing the court's business. *See* N.T., Contempt Hearing, 6/16/22, at 10-11. This case is thus distinguishable from *Rubright*, *Williams v. Williams*, *Campolongo*, and *Meehan*, in that the disruption was not just a passing comment. *See Behr*, 695 A.2d at 779. Calling a judge an indecent name in open court undermines the court's authority and does obvious harm to its ability to conduct an orderly proceeding. *See Falana*, 696 A.2d at 129. Outlaw made his outburst in such a way that those in the courtroom heard the statement. In so doing, he not only demonstrated his disrespect for the court and its command of the courtroom, but also engaged in "a clear effort . . . to brazenly demonstrate his repudiation of the [c]ourt's" ruling and authority. *Williams*, 753 A.2d at 863. If not punished, his conduct would potentially encourage others to commit similar disruptions. Outlaw's conduct caused "actual, imminent prejudice" to "the preservation of the court's orderly procedure and the court's authority." *Id.* We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/06/2023