J-S06012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CIVIL CONTEMPT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1568 EDA 2023 |

Appeal from the Order Entered May 5, 2023
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-JM-0000022-2022

MEMORANDUM PER CURIAM:                    **FILED SEPTEMBER 24, 2024**

A.G. ("Aunt") appeals from the trial court's order finding her in civil contempt.  For the reasons discussed below, we vacate the finding of contempt.

The instant matter arises from dependency proceedings concerning Aunt's nephew, K.B. ("Child"), born in 2010.  ***See*** Aunt's Brief at 5.  The trial court adjudicated Child dependent in July 2020.  ***See id***.  Case manager Natasha Triplett ("Ms. Triplett") from Turning Point Children's Community Umbrella Agency ("CUA") was the caseworker for Child.  ***See*** N.T., 12/16/22, at 5-6.

In July 2022, Child ran away from placement to Aunt's house.  ***See id***. at 6.  Ms. Triplett permitted Child to remain with Aunt pending evaluation of Aunt as a kinship resource by the Philadelphia Department of Human Services ("DHS").  ***See id***.  In October 2022, DHS rejected Aunt's application because

of allegations of domestic violence, inappropriate discipline, and mental health issues involving both Aunt and her paramour. *See id*. Ms. Triplett immediately contacted Aunt to inform her Child would be removed. *See id*. at 7. However, when Ms. Triplett went to Aunt's home, Aunt refused to release Child, necessitating police involvement. *See id*. Aunt then sent threatening text messages to Ms. Triplett, her supervisor, and her director.[1] *See id*. at 8.

In early November 2022, Child ran away from his new placement and returned to the home of his mother, L.B. ("Mother"). *See id*. Ms. Triplett returned Child to placement, but Child again ran away. *See id*. at 8. DHS hired a private investigator ("P.I.") to try to locate Child. *See id*. According to Ms. Triplett, the P.I. told her Mother refused to cooperate and Aunt claimed she knew where Child was but would not disclose the location. *See id*.

On December 6, 2022, a review hearing took place in front of a hearing officer. Child appeared at the hearing. *See id*. at 10. Following the hearing, Ms. Triplett went to a waiting area in the courthouse to speak with Child and Mother about his return to placement. *See id*. At that point, Aunt approached Ms. Triplett and told her, as Ms. Triplett testified, she was going to "smack the mask off my F'ing face." *Id*. at 10-11. Ms. Triplett approached a court officer to ask for assistance from a sheriff. Aunt "charged" her and threw a punch at her. *Id*. at 11. Ms. Triplett rushed back into the courtroom and "the door had

_____

[1] The text messages were not entered into evidence. *See* N.T., 12/16/22, at 8.

to be held shut to keep [Aunt] from getting in." ***Id***. In the confusion, Child again ran away. ***See id***. at 12.

The trial court held a review hearing on December 16, 2022. Although counsel for all parties were present, Mother and Aunt were not. ***See id***. at 2, 4. After presenting the above-discussed testimony from Ms. Triplett, the assistant city solicitor ("ACS") requested and received a stay-away order on Ms. Triplett's behalf against Mother and Aunt. ***See id***. The trial court then *sua sponte* ordered both Mother and Aunt be subpoenaed for the next hearing, and stated:

> [t]here will be a rule to show cause at the next listing with respect to [M]other as to why she should not be held in contempt.
>
> At the next listing, it is this court's belief that we will appoint [A]unt an attorney or give her an opportunity to have her own attorney if she shows up; at which point, we will give a date for a rule to show cause as to why she should not be held in contempt.

***Id***. at 13 (capitalization standardized); ***see also*** Permanency Review Order, 12/16/22, at 1. The trial court also issued a fill-in-the-blank document entitled "Rule to Show Cause-Civil Contempt." In it, the trial court explained Aunt was to appear at the next hearing "to show why she should not be held in contempt for ***not cooperating with DHS***." Rule to Show Cause, 12/16/22 at 1 (unnumbered) (emphasis added).

Mother and Aunt both appeared at the next hearing. ***See*** N.T., 1/26/23, at 3-4. Ms. Triplett again testified as to the events which occurred on December 7, 2022. ***See id***. at 6-7. In addition, for the first time, Ms. Triplett

- 3 -

averred, when she left the courthouse on December 7, 2022, Mother barked at her like a dog and said, "[W]e'll see you when you have [to] come out to the house." *Id*. at 7. Both Mother and Aunt testified they were unaware of Child's whereabouts. *See id*. at 7-8. The trial court directed that counsel be appointed for both Mother[2] and Aunt and told both women that they would be incarcerated if Child was not returned to placement by the next hearing. *See id*. at 8-9.

The record demonstrates the police located Child and returned him to placement before the next scheduled hearing. *See* N.T., 3/2/23, at 16. Despite this, the trial court indicated it would proceed with the contempt hearings. *See id*. at 7. However, Edelina Schuman, court-appointed counsel for Aunt ("Counsel") immediately sought a continuance. *See id*. Counsel attempted to explain that she had been unable to obtain both transcripts and basic information about the underlying dependency case because Aunt "*is not a party to the original [dependency] case*. . .." *Id*. at 8 (emphasis added); *see also id*. at 7-11 (Counsel explains that court administration could not figure out how she was supposed to bill for her services and would not permit her to order transcripts). Ultimately, the trial court granted the request for a continuance but proceeded with a contempt hearing against Mother. *See id*. at 11-21. Following additional testimony by Ms. Triplett, the trial court

_____

[2] The record reflects Mother was already represented by counsel. *See* N.T., 12/16/22, at 4; N.T., 1/26/23, at 4.

found Mother to be in contempt based upon her actions in "barking" at Ms. Triplett and threatening, "We'll see what'll happen when you come out to the house." *Id*. at 14, 22. The trial court sentenced Mother to thirty days in jail.[3] *See id*. at 23.

At the rescheduled contempt hearing for Aunt, Counsel requested an additional continuance, explaining she had not received the final transcript for the March 2, 2023, proceeding until that morning. *See* N.T., 4/17/23, at 4-5. Despite its initial disinclination, the trial court ultimately continued the hearing. In so doing, the trial court agreed with counsel's assertion that this was a *civil* contempt proceeding. *See id*. at 6-7.

The proceedings resumed four day later. The hearing was chaotic making the transcript difficult to read because all participants continually interrupted each other. Additionally, parts of the hearing were not transcribed due to mechanical difficulties. *See* N.T., 4/21/23, at 1-36.

The trial court sought to take judicial notice of Ms. Triplett's prior testimony and admit the notes of testimony of Mother's contempt hearing. *See id*. at 4. Counsel objected, noting she had not been present for Mother's contempt hearing and had no opportunity to cross-examine Ms. Triplett. *See id*. at 5-6. The trial court agreed it would allow Counsel to cross-examine Ms.

_____

[3] Mother does not appear to have appealed the finding of contempt.

Triplett but admitted the prior notes of testimony over Counsel's objection. *See id*. at 6.

Counsel requested the trial court recuse itself because the court had "already shown a predisposition, based on the prior hearings, to fine my client and incarcerate her, and that is not due process or justice." *Id*. at 7. The trial court denied the request. *See id*. at 7-8.

Counsel moved to dismiss the contempt proceedings for lack of jurisdiction because Aunt was not a proper subject of contempt. *See id*. at 8-11. The trial court refused to entertain the application, until *after* the evidentiary hearing. *See id*. at 11.

Counsel argued the trial court was conflating civil contempt with criminal contempt and that civil contempt was improper because the court had failed to set a purge condition and the purpose of the contempt was not to coerce Aunt into complying with a court order. *See id*. at 11-12. The court responded that, "[w]hen I initially said contempt, [I] meant to say . . . indirect *criminal* contempt . . . ." *Id*. at 15 (emphasis added). The court continued, "[i]f I did in fact say civil contempt . . . then I'm going to rectify that, and we will go forward at another time on an indirect criminal procedure[.]" *Id*.[4] The trial court took a recess to consult with its law clerk and concluded it could go

---

[4] As noted above, the rule to show cause, stated this was a civil contempt proceeding. *See* Rule to Show Cause, 12/16/22, at 1 (unnumbered).

forward with a civil contempt proceeding and proceed later on criminal contempt; it later declared it would restrict itself to a civil contempt proceeding. *Id*. at 14.

Counsel stated the controlling statute did not allow for incarceration for civil contempt.[5] *See id*. at 16. The trial court refused to allow Counsel to make further argument and directed her to present her evidence. *See id*. at 16-17. After additional argument as to whether the proceedings were properly characterized as civil or criminal contempt, and Counsel's attempt to withdraw because she did not practice criminal law, the trial court continued the matter, appointed new counsel ("New Counsel") for Aunt, and issued a rule to show cause as to why *Counsel* should not be held in criminal contempt.[6] *See id*. at 17-36.

The court conducted an evidentiary hearing on Aunt's contempt in May 2023. Ms. Triplett, the sole witness, testified consistently with her earlier testimony about Aunt's threatening behavior on December 7, 2022. *See* N.T.,

---

[5] The statute provided, "Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only." 42 Pa.C.S.A. § 4133. Approximately four months later, this Court issued its decision in *Commonwealth v. Davis*, 302 A.3d 166 (Pa. Super. 2023), which found Section 4133 unconstitutional. *See id*. at 171.

[6] The record does not reflect whether Counsel was ever charged with criminal contempt.

- 7 -

5/5/23, at 6-7. No testimony was offered regarding any orders Aunt disobeyed, about her possible role in hiding Child between November 2022 and January 2023, or about any involvement she may have had with Child's flight from the courthouse on December 7, 2022. *See id*. At the conclusion of the testimony, the trial court found Aunt in contempt explaining, "the contempt has to do with **not the order, but [Aunt's] actions with respect to that day.**" *Id*. at 12 (emphasis added). The court initially sentenced Aunt to fifteen weekend days in prison, but on a later date modified the sentence to seventy-two hours in prison. This timely appeal followed.[7]

On appeal, Aunt raises four issues for our review:

1. Whether the trial court erred by finding [Aunt] was in civil contempt by violating a court order that was definite, clear[,] and specific?

2. Whether the trial court erred by finding [Aunt] was in civil contempt by violating a court order and that there was notice of that order?

3. Whether the trial court erred by finding [Aunt] was in civil contempt by violating a court order and that the act constituting the alleged violation was volitional?

4. Whether the trial court erred by finding [Aunt] in civil contempt by violating a court order and that [Aunt] acted with wrongful intent?

Aunt's Brief at 4 (bolding omitted, capitalization standardized).[8]

_____

[7] Aunt and the trial court complied with Pa.R.A.P. 1925.

[8] DHS, although present, did not participate in the contempt proceedings and did not file a brief on appeal. *See* Letter, 1/26/24, at 1 (unnumbered).

As Aunt's issues are interrelated, we address them together. Prior to reaching the merits of Aunt's claims, we must decide if this case is properly before us, as the record indicates Aunt completed her sentence of incarceration. **See** Trial Court Opinion, 11/17/23, at 1.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.
>
> * * * * *
>
> [T]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) (*en banc*) (internal citations and quotation marks omitted). "The concept of mootness focuses on a change that has occurred during the length of the legal proceedings." *In re Cain*, 590 A.2d 291, 292 (Pa. 1991). "If an event occurs that renders impossible the grant of the requested relief, the issue is moot and the appeal is subject to dismissal." *Delaware River Preservation Co., Inc. v. Miskin*, 923 A.2d 1177, 1183 n. 3 (Pa. Super. 2007).

Here, the issues of the difference between civil contempt and criminal contempt and the parameters of a trial court's contempt powers involve a

question of great public importance. Accordingly, we will reach the merits of

Aunt's claims.

We begin, as always, with our standard of review.

> This Court will not reverse or modify a final [order] unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been a capricious disbelief of the credible evidence. As each court is the exclusive judge of contempt[ ] against its process, we will reverse an order of contempt only upon a showing of a plain abuse of discretion.

***Diamond v. Diamond***, 792 A.2d 597, 600 (Pa. Super. 2002) (citation and

internal quotation marks omitted).

In cases such as the instant matter, where there is an attachment and

summary punishment for contempt, 42 Pa.C.S.A. § 4132 provides:

> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>
> (1) The official misconduct of the officers of such courts respectively.
>
> (1.1) The willful failure of the officers of such courts to disclose a person's complete criminal history record information when requested.
>
> (2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
>
> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

- 10 -

This Court has explained the difference between civil and criminal contempt, and stated:

> [t]he proper classification of a contempt adjudication is important because it governs the procedures that must be followed. If the adjudication is criminal, then the contemnor is entitled to all of the procedural rights and safeguards afforded to criminal defendants, including the right to trial by jury. There is nothing inherent in the violation of a court order that renders the violation itself civil or criminal. Rather, it is the judicial response to the violation that determines whether the contempt is civil or criminal. We must look to the nature of the sanction imposed in order to ascertain the trial court's "dominant purpose." ***In the most basic terms, if the dominant purpose is to coerce the contemnor to comply with a court order, it is civil; if the dominant purpose is to punish the contemnor for a past violation, it is criminal.***
>
> ***The typical sanction for civil contempt is remedial in nature***. For example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period.

***Gunther v. Bolus***, 853 A.2d 1014, 1016 (Pa. Super. 2004) (internal citations and quotation marks omitted, emphases added). Our Supreme Court has noted:

> If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature.

- 11 -

***County of Fulton v. Secretary of Commonwealth***, 292 A.3d 974, 1028

(Pa. 2023) (citation and internal citations omitted).

> Further:

> [i]f the relief provided is a sentence of imprisonment, it is remedial
> if the defendant stands committed unless and until [s]he performs
> the affirmative act required by the court's order, and is punitive if
> the sentence is limited to imprisonment for a definite period.

***Vito v. Vito***, 551 A.2d 573, 574 (Pa. Super. 1988) (citations and quotation

marks omitted). This Court has stated while incarceration for civil contempt

is permitted, ***the violator must be afforded the opportunity to purge the***

***contempt***. ***See Wetzel v. Suchanek***, 541 A.2d 761, 764 (Pa. Super. 1988)

(holding the trial court committed reversible error when it sentenced the

appellant to jail for civil contempt and ordered a purge condition that the

appellant could not complete before the end of the imposed prison sentence).

In proceedings for civil contempt, ***the burden of proof rests with the***

***complaining party*** to demonstrate that the defendant is in noncompliance

with a court order. ***See Thomas v. Thomas***, 194 A.3d 220, 226 (Pa. Super.

2018). "To sustain a finding of civil contempt, the complainant must prove,

by a preponderance of the evidence, that: (1) the contemnor had notice of

the specific order or decree which he is alleged to have disobeyed; (2) the act

constituting the contemnor's violation was volitional; and (3) the contemnor

acted with wrongful intent." ***Id***. Nevertheless, "a mere showing of

noncompliance with a court order, or even misconduct, is never sufficient

alone to prove civil contempt." ***Id***.

Aunt contends[9] the trial court erred in finding her in civil contempt because there was no evidence she violated the permanency review order. *See* Aunt's Brief at 10-11. With respect to the December 7, 2022, incident, Aunt argues the action did not happen in the presence of the trial court and there was no evidence Aunt assisted Child in his escape from the courthouse that day. *See id*.

Contrary to its bench ruling, in its Rule 1925(a) opinion, the trial court maintains it found Aunt in *civil* contempt because of her violation of court orders. It explained:

> [t]he first issue is whether the court order which [Aunt] purportedly violated was definite, clear, and specific and whether [Aunt] had notice of the order. . . . [Aunt] was present at the permanency review hearing on December 7, 2022, and after the hearing she was informed of the court's order that [Child] had to return to placement that day with Ms. Triplett.
>
> The next issue is whether [Aunt's] attempt to physically assault the CUA worker in the courthouse after the permanency review hearing[] and leaving with the minor child in violation of the December 7, 2022 permanency review order was willful and with wrongful intent. The permanency review order states: "IT IS HEREBY ORDERED THAT: Legal Custody of the Child shall remain with the Philadelphia Department of Human Services. Placement of the Child shall remain in Foster Care."

---

[9] Aunt addresses her four issues under two headings in her brief, contrary to our rules of appellate procedure. *See* Aunt's Brief, at 9-13; *see also* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Nonetheless, we will address her issues because this discrepancy does not hamper our review. *See Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

Based on the preponderance of the evidence, [the trial c]ourt found that [Aunt] acted with wrongful intent. . . . After learning that [Child] was ordered to return to placement, [Aunt] verbally threatened the CUA worker while outside of the courtroom in the waiting area. The CUA worker did not confront [Aunt], but rather, immediately moved to the other side of the waiting area. When Ms. Triplett attempted to request a sheriff, [Aunt] charged at her[,] swinging, trying to physically assault Ms. Triplett. [Aunt's] attempt at physically harming Ms. Triplett did not stop there. A lot of people in the waiting room, including Mother, tried to hold [Aunt] while an ACS swiftly ushered Ms. Triplett inside a courtroom where the ACS held the door shut with his body weight to keep [Aunt] out while they waited for sheriffs to assist. When the sheriffs finally arrived, [Aunt], [Child], and Mother were no longer there. [Aunt] acted willfully and with wrongful intent, and her actions violated the court's permanency review order.

Trial Court Opinion, 11/17/23, at 7-8 (unnumbered) (citations, record citations, and quotation marks omitted, capitalization regularized).

Initially, this Court wishes to make it abundantly clear Aunt's behavior on December 7, 2023, was deplorable. Her conduct of both verbally threatening, and attempting to physically assault, a CUA worker was inexcusable. Had either DHS or the trial court referred this matter to the District Attorney for criminal prosecution, this would be a different matter. However, the trial court, *sua sponte*, and without the support of DHS, elected to proceed with contempt proceedings and in so doing plainly abused its discretion. As noted above, 42 Pa.C.S.A. § 4132 limits a trial court's power to attach an individual and issue a summary punishment for contempt. ***See***

42 Pa.C.S.A. § 4132.[10] As discussed in greater detail below, Section 3 requires the "misbehavior" both to take place "in the presence of the court" and to obstruct "the administration of justice[,]" neither of which occurred in the instant matter. *Id*. Thus, Section 2, which concerns disobedience or neglect by "officers, parties, jurors or witnesses of or to the lawful process of the court[,]" is the only possible basis for finding Aunt in contempt under Section 4132. *Id*.

Aunt is not an officer or juror, ***nor a party to the dependency proceedings***. Aunt's sole official involvement in the case began in July 2022, when Child, with the permission of CUA, resided with her, and ended in October 2022, when CUA removed Child from her home. Further, contrary to the trial court's finding, the record does not demonstrate Aunt was present in the courtroom for the actual hearing on December 7, 2022. ***See*** Recommendation – Permanency Review, 12/7/22, at 1 (listing those people in attendance and appearing at the hearing).[11] The trial court never enunciated any basis for finding Aunt in contempt under Section 4132.

---

[10] Sections 1 and 1.1 of the statute are inapplicable here because there was no alleged official misconduct or willful failure by officers. ***See id***.

[11] Aunt testified she was present in the ***courthouse*** because CUA told her "to be there to speak to a judge." N.T., 5/5/23, at 9. This testimony was not confirmed by Ms. Triplett, and Aunt never testified at the hearing. ***See id***. at 5-8.

Additionally, to find an individual in civil contempt, the court must accord the individual her due process rights of notice and an opportunity to be heard. *See Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa. Super. 2009). We have defined adequate notice as requiring "that the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed[.]" *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006).

Here, the rule to show cause failed to accord Aunt due process. It vaguely stated Aunt had not cooperated with DHS. But Ms. Triplett is not an employee of DHS, and no DHS employee testified at the contempt proceedings or stated Aunt failed to cooperate with them. The allegation in the rule to show cause was insufficient as a matter of law to give Aunt notice of the order she allegedly violated. *See Stahl*, 897 A.2d at 489.

Moreover, the record of the hearings delineated above and the trial court's ruling from the bench, make clear that the basis for the contempt proceeding was not Aunt's alleged failure to cooperate with DHS, but the December 7, 2023, incident. While the trial court in its 1925(a) opinion belatedly suggests Aunt violated what it calls the December 7, 2023 "permanency review order," it fails to point to, and we have been unable to locate, any place in the record where the trial court placed Aunt on notice that she violated that order. Accordingly, we conclude the trial court violated Aunt's due process rights by failing to provide proper notice of the order or decree she allegedly violated. *See Stahl*, 897 A.2d at 489.

In any event, we have thoroughly reviewed the trial court's explanation of its contempt finding and are unable to discern how Aunt's actions violated the "December 7, 2022, permanency review order." First, there was no December 7, 2022, permanency review *order*. Following the hearing, the hearing officer issued a *recommendation*. *See* Recommendation – Permanency Review, 12/7/22, at 1.[12] Second, as noted above, Aunt is not a party to this action, the recommendation does not mention her, there is no indication she ever received a copy of it, and the trial court does not point to any law supporting the position that it has the statutory authority to bind a non-party.

Third, it is unclear how Aunt's attempted assault and threats to Ms. Triplett, however reprehensible, violated the provision of the order giving legal custody of Child to DHS. To the extent the trial court is attempting to suggest that the attempted assault was a ruse to allow Child to escape, *see* Trial Court Opinion, 11/17/23, at 7 (unnumbered), nothing in the record supports that belated hypothesis. Ms. Triplett did not testify Aunt was involved in Child's escape and did not testify at the hearing that Aunt had knowledge of the

_____

[12] The recommendation did not become an order until it was adopted by the trial court on March 2, 2023, almost three months after the December 7, 2022, incident. *See id*. at 2.

Child's location when he was missing.[13]  *See* N.T., 5/5/23, at 5-8.

Accordingly, we conclude the trial court plainly abused its discretion in holding

Aunt in contempt.

Given the above facts and the trial court's emphasis at the contempt

hearing that Aunt's contempt involved the attempted assault of Ms. Triplett,

we question the court's treatment of this matter as civil contempt.  As we

discussed above, contempt of court may be classified as civil or criminal in

nature.  The distinction between the two categories of contempt rests in the

lower court's purpose for its finding.  As this Court has written:

> [i]f the dominant purpose of the court is to prospectively coerce
> the contemnor into compliance with the court's directive, the
> adjudication is one of civil contempt.  However, if the court's
> dominant purpose is to punish the contemnor for disobedience of
> the court's order, the adjudication is one of criminal contempt.

*In re C.W.*, 960 A.2d 458, 466 (Pa. Super. 2008) (citation omitted).  Here,

the trial court issued the rule to show cause because Aunt threatened and

attempted to assault Ms. Triplett.  The court never imposed a purge condition

and sentenced Aunt to a definite term of incarceration, a sanction that is not

permissible in civil contempt proceedings absent a purge condition.  *See*

*Wetzel*, 541 A.2d at 763-64.  Thus, there are two things that are clear from

_____

[13] While Ms. Triplett did testify at the December 16, 2022, hearing that an unnamed P.I. told her that Aunt knew the child's whereabouts, *see* N.T., 12/16/22, at 8, that statement was inadmissible hearsay and made at a hearing where Aunt was neither present nor represented by counsel.  Thus, the trial court should not have considered it in making its contempt ruling.

the record: (1) the dominant purpose of the contempt order was to punish Aunt for her misbehavior on December 7, 2022, and (2) Aunt was not in violation of any court order. Those are the hallmarks of direct criminal contempt, not of civil contempt. *See In re C.W.*, 960 A.2d at 466.

Pennsylvania law provides rules and sanctions for both direct criminal contempt and indirect criminal contempt.

> A conviction for direct criminal contempt under Section 4132(3) requires proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice.

*Commonwealth v. Outlaw*, 306 A.3d 406, 409 (Pa. Super. 2023) (internal quotation marks and citations omitted), *appeal granted*, 2024 WL 3283727 (Pa. July 3, 2024). Here, we note none of the procedural safeguards attendant to criminal contempt proceedings occurred and the trial court applied the preponderance of the evidence standard, not the beyond a reasonable doubt standard. *See* Trial Court Opinion, 11/17/23, at 6. Moreover, as noted above, this case does not fall within the parameters of 42 Pa.C.S.A. § 4132(3).

Assuming, *arguendo*, Aunt's conduct constituted misbehavior and the intention to obstruct the dependency proceedings, the misconduct nevertheless did not take place "in the presence of the court." Our Supreme Court has stated misconduct occurs "in the presence of the court" if the court itself witnesses the conduct or if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice. *See*

*Commonwealth v. Moody*, 125 A.3d 1, 12 (Pa. 2015). Accordingly, Aunt could not properly have been convicted of direct criminal contempt.

In contrast to direct criminal contempt, indirect criminal contempt is committed

> by obstructive conduct that occurs **outside of the court's presence**. A conviction for indirect criminal contempt requires, *inter alia*, proof that the alleged contemnor's conduct violated a definite, clear, and specific order or decree.

*Commonwealth v. Perkins*, 292 A.3d 1144, 1147 (Pa. Super. 2023) (internal citations and quotation marks removed, emphasis added). In *Perkins*, this Court reversed a finding of direct criminal contempt where the defendant threatened a witness by the courthouse elevators, outside the presence of the court, and the trial court only heard about when the witness reported the threat. *See id*. at 1148. We see little difference between the instant matter and the events in *Perkins*. Thus, even if the trial court had treated the matter as criminal contempt, the verdict could not stand. *See Perkins*, 292 A.3d at 1148. Moreover, as discussed above, Aunt's conduct did not violate "a definite, clear, and specific order or decree[,]" thus she did not commit indirect criminal contempt. *See id*. at 1147.

While we do not condone Aunt's actions, we are disturbed by the record in this matter. DHS sought neither contempt proceedings nor criminal prosecution. The trial court elected, of its own accord, *sua sponte*, to hail Aunt back into court to institute contempt proceedings. Our review of the transcripts shows the trial court did so with the expressed intent of punishing

Aunt. When Counsel pointed out the same legal difficulties highlighted in this memorandum, the trial court threatened **Counsel** with criminal contempt. The trial court's actions in this matter disregarded Aunt's due process rights and were at odds with well-settled law on contempt. Accordingly, for the reasons discussed above, we vacate the finding of contempt.

Order vacated.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2024